### CORNELIUS BUCKLEY vs. CITY OF NEW BEDFORD.

Bristol. October 29, 1891. — November 25, 1891.

Present: ALLEN, HOLMES, MORTON, & BARKER, JJ.

*System of Sewers — Private Drain — Nuisance.*

In an action against a city for having created a nuisance on the plaintiff's land, it appeared that the defendant constructed a system of sewers with so narrow an outlet that the sewage and the waters of a natural stream also taken into the sewer were set back; and when the plaintiff, under a permit duly obtained from the city, entered his drain into the sewer, his cellar on several occasions was overflowed through the drain. *Held*, that the action could not be maintained.

TORT, for flowing the plaintiff's cellar through a drain connecting with a common sewer in Acushnet Avenue in the defendant city. Trial in the Superior Court, before *Hammond*, J., who reported the case for the determination of this court, in substance as follows.

There was evidence tending to show the following facts. The plaintiff's premises were situated on Acushnet Avenue, in a section of the city drained by the Willis Street sewer system, so called, which it was admitted was the property of the city. Acushnet Avenue ran from north to south at the foot of a hill past the ends of Sycamore Street, Campbell Street, and Willis Street, all of which ran in an easterly direction down the hill, and were parallel with one another. The sewer in the avenue, which was twenty-four inches in diameter, was laid therein at nearly a flat grade, under an order of the city council passed in 1877, and discharged into a forty-eight inch sewer in Willis Street, which extended in an easterly direction across Acushnet Avenue into tide water. A sewer had been laid in Sycamore Street at an earlier period, which was connected with the

Acushnet Avenue sewer when the latter was built, and which from a point at which a natural stream was turned into it to its connection with the Acushnet Avenue sewer was thirty-six inches in diameter. The flow from the Sycamore Street sewer was relieved by a fifteen-inch pipe running from the sewer in the avenue at a point opposite that street easterly into tide water. A twenty-four-inch sewer already built in Campbell Street was made to discharge into the Acushnet Avenue sewer after the latter was built. In April, 1888, the plaintiff duly applied for and obtained a permit to enter a private drain into the Acushnet Avenue sewer, and the connection was made by an employee of the defendant city, whose duty it was to do so, at a point about five inches from its bottom; and in so doing the plaintiff complied with the city ordinances and the regulations of the board of health. In July, 1888, the plaintiff caused a water-closet to be put into his cellar by a competent plumber, and connected the same with his drain-pipe, the top of the bowl of the closet being about on a level with the top of the sewer, and being built as high as the space in the cellar would permit. Until August 27, 1888, the plaintiff's house and cellar were dry and free from water, but on that day, and again in the September and January following, there were heavy falls of rain, and the cellar was overflowed with water and sewage, which backed up from the sewer through the closet and stood in the cellar to the depth of several inches, and created a nuisance.

The plaintiff offered by competent evidence to show that the fifteen-inch overflow at the place where the Sycamore Street sewer connected with the Acushnet Avenue sewer was not sufficient to keep the latter from being clogged up; that the Acushnet Avenue sewer was not built large enough to take care of the water and sewage that came from the sewers that ran into it; that the Willis Street sewer (into which the Acushnet Avenue sewer emptied) was not large enough to carry off the water and sewage that emptied into it from the Acushnet Avenue sewer and its connections; and that the overflowing of the cellar was in consequence of the Acushnet Avenue sewer and Willis Street sewer being unable to take care of the water and sewage that came into them, and thus flowing back upon the plaintiff's premises by reason of the insufficient size of the sewers.

No claim was made that the sewers were out of repair, or that they had been clogged up in any way, except so far as they were clogged up by the water and sewage that came into them.

The defendant contended that the injury to the plaintiff resulted from a defect or want of sufficiency (if any) in the plan of drainage adopted, and for this it was not liable; also that the size of the sewers, which was fixed by the mayor and aldermen at the time of their construction, was not subject to the control of the city, and it would not therefore be liable even if the same had been so fixed by the mayor and aldermen of an insufficient size; and that the mayor and aldermen in so fixing the size acted as public officers, and not as agents of the city.

The judge ruled that, upon the plaintiff's proof and the facts offered to be proved, the action could not be maintained, and directed the jury to return a verdict for the defendant. If the ruling and direction were erroneous, a new trial was to be granted; otherwise, judgment was to be entered on the verdict.

*H. M. Knowlton & F. A. Milliken,* for the plaintiff.

*W. H. Cobb, (T. F. Desmond* with him,) for the defendant.

HOLMES, J. This is an action of tort to recover damages against the city of New Bedford for having created a nuisance on the plaintiff's land. The plaintiff's case was that the defendant constructed a system of sewers with so narrow an outlet that the sewage and the waters of a natural stream which were taken into the sewer were set back, and when the plaintiff entered his drain into the sewer his cellar was overflowed through his drain. As we understand the report, the size of the outlet of the sewer was fixed by the mayor and aldermen at the time of the construction. The judge below ruled that the action could not be maintained.

The insufficiency of the outlet, by itself alone, did the plaintiff no harm. If he had not connected his drain with the sewer, so far as appears, his land would not, and could not, have been flowed. We are not called on to consider whether, in case of the adoption of a system resulting in destruction or serious damage to the plaintiff's land under a statute providing no compensation, the rule would apply that an action does not lie against a city for a defect in the plan or system of drainage adopted by the mayor and aldermen, (*Bates* v. *Westborough,* 151 Mass. 174,

182, and *Child* v. *Boston*, 4 Allen, 41,) or whether somebody, not necessarily the city, would be liable under such circumstances. See *Merrifield* v. *Worcester*, 110 Mass. 216; *Johnston* v. *District of Columbia*, 118 U. S. 19; *Seifert* v. *Brooklyn*, 101 N. Y. 136; *Ashley* v. *Port Huron*, 35 Mich. 296; Dillon Mun. Corp. §§ 1046, 1047, 1051.

The plaintiff's cause of action, if any, depends upon and springs out of his right to connect his drain with the sewer. If that connection was wrongful, he could not complain of the consequences of making it. Unless he had a right to open the sewer, the city did him no wrong by keeping it full of sewage and choked. It does not follow, necessarily, that he stands better because he acted rightfully in making the connection. We assume in the plaintiff's favor that he had a license, that he had paid or in some way had given a consideration for it, and that his right, whatever its exact nature, was one which he could insist on exercising *in specie* to some extent, and which could not be revoked at the mere whim of the defendant. Still, his right was only to connect with the existing system such as it was. Obviously, he could not complain that the system was not at a lower grade, and would not drain his land below the level at which the sewer was established. *Child* v. *Boston*, 4 Allen, 41, 51, 52. It seems to us that, for the same reason, he could not complain that the sewer would not drain his land below a certain grade above its own level, if its inability to do so was due to the plan on which it was constructed. It cannot matter to which part of the plan the sewer owes its inability to drain lower, whether the level at which it is constructed, the degree of its pitch, or the size of its mouth.

If this be so, it follows that the plaintiff has no right to require the city to keep the contents of its sewer from overflowing any level below that which the sewer will drain in case he sees fit to open a connection into it, — no permanent property right, that is, for we are not considering at whose peril the original opening was made. After the original overflow, at least, the plaintiff had notice of how the sewer worked, and his remedy was in his own hands by stopping his drain. This action is not brought for misrepresentations, or for momentary damage caused by the plaintiff's doing what he was led to suppose, or had a right

reasonably to suppose, that he might do with safety; it is brought for a continuing nuisance on the footing of a right of property which is infringed. The plaintiff's right of property, if it be one, is not an absolute right to make a hole at a certain height in the sewer, or to connect a pipe having a mouth at a certain height with the sewer, and to require the city thereafter to see at its peril that he does not suffer by the opening. His right is simply to connect a pipe having a mouth at such height as will be safe under the existing system. If he connects one having a mouth lower than that, he maintains it at his own risk after experience has shown the danger.

It will be understood that we are not speaking of a case where there is negligence in the construction or maintenance of a sewer after the plan has been settled, as in *Child* v. *Boston*, *Bates* v. *Westborough*, and that class of cases. See *Fort Wayne* v. *Coombs*, 107 Ind. 75, 83; *Buchanan* v. *Duluth*, 40 Minn. 402. Also, we have no occasion to consider what would be the law in the present case if the ordinance of New Bedford had purported to require the plaintiff to connect his drain with the sewer. *Barry* v. *Lowell*, 8 Allen, 127, 128. There is no evidence of any such requirement.                *Judgment on the verdict.*