Donahoe v. Kansas City, *Appellant.*

Division Two, January 19, 1897.

1. **Cities:** SEWER CONSTRUCTION: NEGLIGENCE. The construction of sewers in a city is a corporate and ministerial function as distinguished from a governmental one and a city is responsible for injuries arising from its negligence in the performance of the work.

2. ———: ———: ———. A city authorized by its charter to establish sewers can not escape liability for its negligence in their construction on the ground that it did the work directly through the superintendent of its streets when its charter provided it should be done by contract let to the lowest bidder.

3. ———: ———: ———: FELLOW-SERVANT. Where the superintendent of the streets of a city, having charge of the construction of a sewer, provides all material for bracing the sides of the work and directs the manner of placing them and the work is done accordingly, and a laborer, while working in the trench is injured because of defective bracing, such negligence is that of the city and not of a fellow-servant, though a foreman was in immediate charge of the work.

4. ———: ———: ———: ASSUMPTION OF RISK. The laborer did not assume the risk merely because he knew how the work was being done; it must also appear that he knew it was dangerous and continued to work.

*Appeal from Jackson Circuit Court.*—Hon. J. H. Slover, Judge.

AFFIRMED.

*H. C. McDougal, F. F. Rozzelle* and *Clarence S. Palmer* for appellant.

(1) The authority of the city to build sewers is given for a public purpose; not for the private benefit

of the corporation, and the city is not liable for the negligence of its officers and employees. *Murtaugh v. St. Louis*, 44 Mo. 479; *Carrington v. St. Louis*, 89 Mo. 208; *Kiley v. Kansas City*, 87 Mo. 103; 15 Am. and Eng. Ency. of Law, 1141, sec. 16. (2) Kansas City has the right to provide for the construction of a sewer only by ordinance (sec. 1, art. 3, page 13 and subdivision 6 of same section, page 14, of the city charter). *First*. Sewers constructed by the city must be built by independent contractors and not otherwise (Sec. 12, art. 17, page 130, city charter). *Second*. If the work had been done in the manner provided by the charter there could be no liability of the city. *Sedalia Gas Light Co. v. Mercer*, 48 Mo. App. 652; *Blumb v. Kansas City*, 84 Mo. 112. *Third*. The work in question being unauthorized by law, no liability against the city can arise by reason of the negligence of an officer or employee of the city in doing the unauthorized work. *Cheeney v. Brookfield*, 60 Mo. 53; *Mister v. Kansas City*, 80 Mo. App. 217; *Fruin-Banbrick Construction Co. v. Geist*, 37 Mo. App. 539; *Thompson v. Bonneville*, 61 Mo. 282; *Rowland v. Gallatin*, 75 Mo. 134; *Werth v. Springfield*, 78 Mo. 170; *City to use v. Eddy*, 123 Mo. 546; *Trenton v. Coyle*, 107 Mo. 183; *Stewart v. Clinton*, 79 Mo. 603. (3) Powers, the foreman, was a fellow-servant of respondent, and appellant is not liable for his negligence. *Marshall v. Schricker*, 63 Mo. 308; *Lee v. Detroit, etc., Works*, 62 Mo. 565; *Hamilton v. Railroad*, 4 Mo. App. 564; *Kersey v. Railroad*, 79 Mo. 363; *Parker v. Railroad*, 109 Mo. 362; *McGowan v. Railroad*, 61 Mo. 528; *Conley v. Portland*, 78 Me. 217. (4) The respondent was guilty of contributory negligence. *David v. Railroad*, 50 Mo. 302; *Steffen v. Mayer*, 96 Mo. 420; *Albridge v. Midland Blast Furnace*, 78 Mo. 559.

*W. B. Teasdale* and *R. I. Ingraham* for respondent.

(1)   The work was corporate or private, as distinguished from governmental or public.   After the plan of the sewer had been adopted, and work thereunder begun, it ceased to be judicial and became ministerial, and the city was liable for the negligence of its agents or servants accomplishing the work.   *Dayton v. Pease,* 4 Ohio St. 80; *Hannon v. St. Louis Co.,* 62 Mo. 312; *McKenna v. St. Louis,* 6 Mo. App. 321; Jones, Neg. Mun. Corp., chaps. 3 and 4; Dill. Mun. Corp. [4 Ed.], secs. 66, 1048, 1049, 1050; *Coan v. Marlborough,* 164 Mass. 206; *Board Com's v. Com. Council,* 28 Mich. *loc. cit.* 236; *Barnes v. Detroit,* 94 Mich. 601; *Whitfield v. Carrollton,* 50 Mo. App. 101.   (2)   It is the settled doctrine in this state for negligence in the construction of streets or sewers, the municipality is liable.   These cases settle the doctrine that such work is corporate and not governmental.   *Broadwell v. Kansas City,* 75 Mo. 213; *Werth v. Springfield,* 78 Mo. 107; *Weyman v. Jefferson City,* 61 Mo. 55; *Thurston v. St. Joseph,* 51 Mo. 510. (3)   The cases cited by appellant apply to those governmental matters, such as asylums, hospitals, prisons, etc., as to which the city is held to be but the arm of the state, and therefore not liable for negligence in the discharge of such duties.   *Murtaugh v. St. Louis,* 44 Mo. 479; *Ulrich v. St. Louis,* 112 Mo. 138.   (4)   A municipal corporation is governed, as to corporate matters, by the same rules as an individual.   Having properly created the relationship of master and servant (by ordinance) it can not shirk the duties ordinarily resting upon the master.   *Breen v. Field,* 31 N. E. Rep. 1075; *Weed v. Greenwich,* 40 Conn. 170; Wood on Master and Servant [2 Ed.], sec. 5457; Cooley on Torts,

pp. 120, 122, 538; Dill. Mun. Corp. [4 Ed.], sec. 974; *Barnes v. District of Columbia*, 91 U. S. *loc. cit.* 545; *Salt Lake City v. Hollister*, 118 U. S. 256; *Kobs v. Minneapolis*, 22 Minn. 159; *Lee v. Sandy Hill*, 40 N. Y. 442; *Thayer v. Boston*, 19 Pick. 511; *Railroad v. Schuyler*, 34 N. Y. *loc. cit.* 49; *Alexander v. Relf*, 74 Mo. 495. It may be true that the city having ordered this work to be done in the manner it was (indirectly only) could not thus render the sewer district liable for the cost. Yet it does not follow that the acts of its duly appointed agents, employing men and placing them at work within the scope of this authority, are not its acts. His negligence is its negligence. *Haehl v. Railroad*, 119 Mo. *loc. cit.* 343; *District of Columbia v. Woodbury*, 136 U. S. *loc. cit.* 456; *Bank v. Graham*, 100 U. S. 694; *Central Railroad v. Smith*, 76 Ala. 572. (5) The distinction arises from this: A city can not delegate the power to inaugurate public work, but it can delegate the power to employ men and place them at work. Dill. Mun. Corp. [4 Ed.], sec. 96; *Hitchcock v. Galveston*, 96 U. S. 341; *Railroad v. Marion County*, 36 Mo. 294; *Bissell v. Railroad*, 22 N. Y. 258. (6) Moreover, the city, by ordinance, provided that the sewer be built. It had power to cause it to be built either as a public sewer, district sewer, repair of an existing sewer, work necessary to abate a nuisance or to secure the general health. Charter 1889, art. 2, sec. 6; art. 9, sec. 9; art. 7; art. 3, sec. 2. (7) The manner of procedure depended upon which theory the city proposed to build it. Instead of letting it to the lowest bidder, the city by ordinance directed the superintendent of streets to do the work ordered by the board of public works, and the said board ordered the superintendent to do this work. Here, then, was a work lawful in its nature, within the scope of the charter power of the city, and authorized, but done in an unlawful or unauthorized manner (not

let by public bidding). The city also ratified it by paying for the work. It is settled in this state that for the acts of its agents in such cases the city is liable. *Pekin v. Newell*, 26 Ill. 320; *Dooley v. City of Kansas*, 82 Mo. 445; *Worley v. Columbia*, 88 Mo. 106; *Soulard v. St. Louis*, 36 Mo. 546; *Hunt v. Boonville*, 65 Mo. 620; *Allison v. Richmond*, 51 Mo. App. 133; *Chicago v. Turner*, 80 Ill. 419. The failure to let by competitive bidding does not render the act *ultra vires*. *Home Bldg. Co. v. Roanoke*, 27 L. R. A. (Va.) 551; *Weller v. St. Paul*, 40 Minn. 460. (8) Whether the negligence was the omission of the superintendent of streets or that of foreman Powers, in either case, it remained the negligent omission of the city, inasmuch as the duty rested primarily on it, and it was never discharged. *Moore v. Railroad*, 85 Mo. 594; *Sullivan v. Railroad*, 107 Mo. 66; *Ross v. Railroad*, 112 Mo. 45; *Dayharsh v. Railroad*, 103 Mo. 590; *Miller v. Railroad*, 109 Mo. 350; *Browning v. Railroad*, 124 Mo. 55; *Mulcairn's Adm'x v. Janesville*, 67 Wis. 34.

BURGESS, J.—This is an action for damages for personal injuries sustained by plaintiff while engaged as a laborer in digging a trench for a sewer in said city. The work was being done by the superintendent of streets of the city under an order of its board of public works. Plaintiff was employed by said superintendent. The work was being done under the immediate charge of one Powers as foreman, who was also employed by the superintendent.

The petition alleged "that the defendant and its duly appointed representative in charge of said work, negligently and carelessly failed to sufficiently brace, shore up, and protect the walls of said trench so as to make said trench reasonably safe for plaintiff to work in, in this: that it failed to place enough braces in said

ditch, and placed the braces therein too far apart, and failed to use sufficient lumber in shoring up the sides of said ditch as it was the duty of defendant and its representative to do.''

The ditch caved in while plaintiff was at work and he was severely injured by the falling earth.

The defenses were a general denial of the allegations in the petition, and charges of contributory negligence.

From a judgment in favor of plaintiff in the sum of $3,500 defendant appealed.

In 1891 the defendant city in pursuance of a provision of its charter, providing that it shall have power ''to establish, erect, and keep in repair bridges, culverts, sewers, and to regulate ᴜhe use of same,'' passed the following ordinance under which it is claimed by plaintiff the work was being done at the time plaintiff was injured, to wit:

''An ordinance to establish and cause to be constructed a joint district sewer in sewer districts numbers 108 and 166.

''Be it ordained by the common council of Kansas City:

''Section 1.   That a joint district sewer be and the same is hereby established and shall be constructed in sewer districts numbers 108 and 166, which shall be as follows, to wit:

''Beginning at a point on the center line of Campbell street sixty-six (66) feet north of the north line of Nineteenth street, thence south along the center line of Campbell street to a point one hundred and forty-eight and five tenths (148.5) feet south of the south line of Nineteenth street, thence on a curve to the right forty-six and five tenths (46.5) feet to a connection with the O. K. creek sewer, with an interior diameter of six (6) feet, six (6) inches.

"The aforesaid sewer shall be constructed of the best hard burned brick, and shall be constructed in accordance with plans prepared for the construction of the same now on file in the office of the board of public works, marked 'approved,' and dated August 21, 1891.

"A manhole for inspection, ventilation, and cleaning shall be constructed as a part and appurtenance to said sewer at a point on the center line of Campbell street eighteen (18) feet south of the north line of Nineteenth street.

"Section 2. The work to be completed within forty (40) days from the time a contract therefor binds and takes effect, and to be paid for in bills of assessment of special taxes against and upon the lands in the aforesaid sewer districts, as provided by law; this work the board of public works and common council deem necessary for sanitary and drainage purposes.

"Section 3. All ordinances or parts of ordinances in conflict with this ordinance are, in so much as they conflict with this ordinance, hereby repealed."

On October 31, 1893, the board of public works made an order by which the superintendent of streets was ordered to construct the connection of the Campbell street sewer with O. K. creek sewer. Prior to the issuance of this order, the city, by ordinance number 268, had directed the superintendent of streets to do whatever work the board of public works might order. By this ordinance he was also authorized to employ laborers and foremen, and he was also authorized to direct them where to work.

Acting on this order of the board of public works, and the said ordinance of the city providing for the construction of said sewer and the ordinance directing · him to do work ordered by the board of public works and employ men and place them at work, the superintendent of streets, after getting the plans from the city

engineer as to location, levels, etc., proceeded to build said sewer. Acting under ordinance number 268, giving him power to employ laborers, foremen, etc., he employed respondent and others and placed them at work on the sewer in question. The sewer was built in accordance with the provisions of said ordinance, excepting that the work was not done by public contract. Charter provisions with respect to advertising for bids for the work, etc., were not observed. Plaintiff's wages were paid by the city.

At the time of the injury the trench in which plaintiff was at work was braced and shored up in accordance with the directions of the superintendent. The earth in which the excavation was made was what is known as "filled" or "made" earth, which was more liable to cave, and therefore required more bracing. Plaintiff did not know that it was "filled" earth. The excavation was seven or eight feet deep when he began working in the trench. He had been working in the trench only a day and a half when hurt. All of his experience prior to the time of the excavation, with the exception of one job, was in rock work, and he was not familiar with dirt excavations.

1. The first point for consideration is as to whether the authority conferred upon the defendant city to establish and build a system of sewers is for the benefit of the public, or for private benefit to the corporation. If for the benefit of the public, and not for any private benefit to the corporation, plaintiff concedes that defendant is not liable for the negligence or misfeasance of its officers in and about the work on this sewer.

This is but a concession of what is the well settled law in this state. *Murtaugh v. St. Louis*, 44 Mo. 479; *Hannon v. St. Louis County*, 62 Mo. 313; *Armstrong v. Brunswick*, 79 Mo. 319; *Kiley v. Kansas City*, 87 Mo. 103; *Carrington v. St. Louis*, 89 Mo. 208; *Keat-*

*ing v. Kansas City*, 84 Mo. 415; *Ulrich v. St. Louis*, 112 Mo. 138.

But plaintiff insists that the building of sewers, construction of streets, and work of that general char-- acter, by municipal corporations, is the exercise of a corporate or private function of power, as distinguished from a governmental or public function of power.

It is sometimes a difficult matter to draw the line of demarcation between what acts of a municipal cor- poration are for the benefit of the public and those which are for the private benefit of the corporation. In *McKenna v. St. Louis*, 6 Mo. App. 320, it was said: "Municipal corporations are considered by law in two aspects. In one, their functions are chiefly ministerial and relate to corporate interests only. These include the making and improving of streets, the construction of sewers and other improvements and keeping them in repair, the holding of property for corporate pur- poses, etc. But as to these matters of strictly corpo- rate interest there are often duties to be performed of a legislative or judicial character. In the other aspect, the corporation is regarded as holding a *quasi* delegated sovereignty for the preservation of the public peace and safety and the prevention of crime. This includes the maintenance of a police force, the appointment of officers charged with the public health, the establishing of regulations for the suppression of vice, and other matters of public concern in which all people have a common interest which it is the chief end of every good government to protect."

Keeping the peace, enforcing laws and ordinances, preserving the public health, preventing fire, punish- ing criminals and wrongdoers, caring for the poor, and educational work, are questions within the prov- ince of the municipality as a governmental agency,

and upon these and similar questions they act without responsibility.

In Jones on Negligence of Municipal Corporations [1 Ed.], section 140, page 266, it is said: "There are, ordinarily, many preliminary questions to be settled before the details of any public work can be arranged. These are questions which call into force the governmental powers of the corporations. They concern, ordinarily, the expediency of doing the proposed work and the general manner in which it shall be done. And upon these and similar questions municipal corporations act without responsibility. It is for them to decide in what manner they shall exercise their discretionary and judicial powers, and they incur no liability because of their decisions upon these questions. Thus, in regard to drains and sewers, it is ordinarily for the corporation to decide when it shall have a system of drainage and sewerage; how extensive the system shall be, and what amount of money the corporation shall expend upon it. These are questions within the province of the municipality as a governmental agency, and the courts can not review its conclusions in regard to them. And, until they are settled and some specific work is decided upon, the legal obligation to exercise care is not brought to life."

"But as soon as the corporation has determined to construct a public work, it enters upon an undertaking which, in all its details, should be subordinated to the rule requiring the use of care, for the work is then ministerial." *Ib.*, sec. 141, p. 267.

In *Johnston v. District of Columbia*, 118 U. S. 21, it is said: "But the construction and repair of sewers, according to the general plan so adopted, are simply ministerial duties; and for any negligence in so constructing a sewer, or keeping it in repair, the municipality which has constructed and owns the sewer may

be sued by a person whose property is thereby injured.''

"The work of constructing gutters, drains, and sewers is ministerial, and when, as is usually the case, the undertaking is a corporate one, the corporation is responsible in a civil action for damages caused by the careless or unskillful manner of performing the work.'' 2 Dillon's Municipal Corporations [4 Ed.], sec. 1049.

The same rule was announced by this court in *Thurston v. St. Joseph*, 51 Mo. 510, and seems to be the general if not uniform doctrine upon this subject.

The sewers of the city are its private property; the citizens are alone interested in them, the general public of the state at large has no interest in them, any more than they have in water works when owned by a city, by which its citizens are supplied with water, and in this very important particular differ from the streets of the city, which are for the benefit of the public generally.

2. The construction of the sewer being ministerial, can the city escape liability to plaintiff for the injuries sustained by him while working in the sewer upon the ground that its charter (secs. 1 and 6, art. 3, and sec. 12, art. 17) provides, that the construction of sewers shall be let out by contract to the lowest bidder when in this case the construction was done by the city under what is assumed by plaintiff its general powers?

It is argued by defendant, that as the work in digging the trench for the sewer was not done as provided by the charter it was unauthorized, and that in consequence thereof, no liability can arise by reason of the negligence of an officer or employee of the city in doing work, not in accordance with the provisions of its charter.

It must be remembered that this is not an action for the violation of a contract entered into by defendant city, without authority, as was in *Cheeney v. Brook-*

*field*, 60 Mo. 53; nor is it an action of trespass against the city for acts done by its officers or employes, not authorized by its charter, or not done in accordance with its ordinances, as in *Thomson v. Boonville*, 61 Mo. 282; *Rowland v. Gallatin*, 75 Mo. 134; *Stewart v. Clinton*, 79 Mo. 603, and cases of like character, in which it is ruled that cities can only be held liable when they have proceeded in substantial compliance with the mandates of their charters and ordinances; but it is an action growing out of contract between master and servant, by which the law implies an undertaking on the part of the master to furnish the servant a reasonably safe place to work. It is evident that the work of constructing the sewer was not let to the lowest bidder as provided by ordinance, but we do not think it absolutely necessary that it should have been so done in order to enable plaintiff to maintain this action.

By its charter defendant is given power to establish sewers and to regulate the same, and while it had no power to authorize the commission of a trespass, yet inasmuch as it was acting within the general scope of its power in constructing the sewer, it was doing an act in its nature lawful, although done in an unlawful manner. It had by ordinance established the sewer, had directed the superintendent of streets to do whatever work the board of public works might order; had authorized him to employ laborers and direct them where to work, and in pursuance of this authority he employed plaintiff and the city paid him for his labor.

In *Norton v. New Bedford*, 43 N. E. Rep. 1034, the plaintiff was employed as a laborer in the construction of a sewer and while at work in a trench was hurt by the caving in of one side of the sewer. The court said: "It would be unjust to allow the city to contend in defense of this action that, because of some omis-

sion or irregularity in the proceedings of its officers or boards, the sewer was constructed without authority of law. Having the power to lay and construct sewers, and having allowed this sewer to be put in course of construction as a public sewer, by the officials of the city, and under an appropriation of its money for the purpose, and having used the sewer as an actual part of its sewer system, the city is not to be excused for a negligent failure to give the plaintiff a reasonably safe place in which to work by saying that the sewer was not legally established.    *    *    *    While the irregularities and omissions in the laying out or establishment of the sewer might be taken advantage of on a petition for *certiorari*, they can not be taken advantage of by the city in this collateral proceeding, brought against the city by a workman who has been employed by its board of public works upon the footing that the city had the right to build the sewer.''

The corporation having as a natural person undertaken the construction of the sewer, should, to the same extent, and under the same circumstances, be held to respond in damages for the wrongful acts of its officers and servants, and should not be permitted to escape responsibility upon the ground that such wrongful acts resulted from the exercise of powers not granted by its charter or ordinances.

3. Another contention is, that the foreman in charge of the work at the time and place of the accident was a fellow servant of plaintiff, and that therefore defendant is not liable for his negligence.

The superintendent of streets in defendant city had charge of the work on the sewer. He employed hands, placed a foreman over them, and gave directions to them how the work should be done. He also furnished the lumber and necessary braces, and directed how they should be put in, which was done according

to his directions. The bracing was done under the express directions of the superintendent of streets who was in no sense a fellow servant of plaintiff, and the fact that directions by him as to the manner in which it was to be done were directly to the foreman in the immediate charge of the work did not change the relations between the superintendent and plaintiff. The foreman was but the defendant itself acting through another medium. *Moore v. Railroad*, 85 Mo. 594; *Browning v. Railroad*, 124 Mo. 58; *Dayharsh v. Railroad*, 103 Mo. 570; *Mulcairns v. Janesville*, 67 Wis. 24; *Miller v. Railroad*, 109 Mo. 350; *Russ v. Railroad*, 112 Mo. 45; *Sullivan v. Railroad*, 107 Mo. 66.

There is no pretense that the sides of the trench where the accident occurred were properly braced in the first place, and subsequently rendered unsafe or insecure by the act or negligence of a fellow servant of plaintiff. The accident was not occasioned by the act or omission of a fellow servant.

4. A final contention is that although the defendant may have been guilty of negligence in not placing enough braces in the trench, and in placing the braces therein too far apart and in failing to use sufficient lumber in shoring up the side of the trench, yet if the plaintiff knew of this negligence and failure of defendant, at the time of the accident, then he assumed the risk incident to working in said trench in that condition.

Conceding that plaintiff knew the manner in which the trench was braced this alone would not prevent his recovery; it must have been further shown that he knew that it was dangerous and that he thereafter continued to work knowing it to be so. *Sullivan v. Railroad*, 107 Mo. 66.

It was a duty which defendant owed to plaintiff to furnish him a reasonably safe place in which to work.

The superintendent of streets as well also as the foreman in charge of the work knew or might have known, had they discharged their duty, the unsafe condition of the bracing in this instance. "This duty is personal to the master, and if intrusted to a foreman, the negligence of the foreman is the negligence of the master." *Bowen v. Railroad*, 95 Mo. 278.

Moreover, whether plaintiff ever became aware of the unsafe condition of the sewer before the accident, and thereafter assumed the risk by continuing in the service, were questions that were submitted to the jury under instructions very favorable to defendant, and they found adversely to this contention.

Finding no reversible error in the record the judgment is affirmed. GANTT, P. J., and SHERWOOD, J., concur.