R. W. VAN TRUMP, Appellant, v. KANSAS CITY, a Municipal Corporation, Respondent.

Kansas City Court of Appeals, February 1, 1915.

1. MUNICIPAL CORPORATIONS: Damages: Stoppage of Private Sewer. Plaintiff connected the basement of the building he was about to erect with a private sewer without permission from the owner of the sewer and without a permit from the city so to do, all of which was in violation of a city ordinance. At the time he connected, there was a public sewer in front of his building of a greater depth and having a better fall than the private sewer, and a city ordinance required him to connect with the public sewer. The private sewer had existed for years prior thereto with catch basins opening into it through which surface water and dirt from the streets went into and choked the private sewer. These catch basins were put in by certain city officers but with no authority so to do from the city. The sewer never became a public sewer and no act of the city ever recognized it as such. After plaintiff connected with the private sewer, and before his building was erected the sewer became choked, and flooded his basement, of which he was well aware. *Held*, that under these circumstances the city was not liable, and that a demurrer to plaintiff's evidence was properly sustained.

2. ———: ———. Where there is no proof that a city authorized a wrongful act, there is no liability.

3. ———: ———: Duty to Maintain Open Sewers. If a sewer is private, and the city never gave permission to treat and use

it as public, then the city is under no obligation to maintain it open and free of obstructions.

4. ——: ——: ——: **Wrongful Act of Plaintiff.** Where damage is caused in part by the unlawful and wrongful act of the plaintiff in connecting with the private sewer contrary to the city ordinances, he cannot recover.

Appeal from Jackson Circuit Court.—*Hon. D. E. Bird,* Judge.

AFFIRMED.

*Frank G. Warren* and *Albert S. Marley* for appellant.

(1) Appellant had a right to connect with the private sewer which ran over private ground, and the city cannot defend its wilful tortious acts by pleading that appellant is a trespasser upon property of a third person, a stranger to the city. Reed v. Price, 30 Mo. 442; Levy v. McClintock, 141 Mo. App. 600; Barberick v. Anderson, 45 Mo. App. 272. (2) The city will not be excused by pleading that appellant's damages were sustained on account of his making an improvident connection with a sewer, knowing that it would cause him damage, because the evidence shows that the damage did not occur by reason of the fact that appellant made his connection with the sewer, but was caused wholly by the fact that after the connection was made, trash, gravel, oil, etc., were thrown into the sewer through the city's catch-basins and that this alone caused the stoppage and resulting damage. McInery v. St. Joseph, 45 Mo. App. 296; Carson v. City of Springfield, 53 Mo. App. 295; Rychlicki v. City of St. Louis, 98 Mo. 497; McCormick v. Railroad, 57 Mo. 434.

*A. F. Evans* and *Francis M. Hayward* for respondent.

(1) A city being under no obligation to maintain a private sewer it is not liable for damages caused by

the stopping of a private sewer. Skinner v. Slater, 159 Mo. App. 589; Kosmak v. New York, 117 N. Y. 361, 22 N. E. 945; Robinson v. Danville, 101 Va. 213; Smith v. Gloucester, 201 Mass. 329, 87 N. E. 626; Gleason v. Kirksville, 136 Mo. App. 521; Kidson v. Bangor, 99 Me. 139. (2) One who unlawfully connects with a sewer cannot recover damages against the municipality for the stoppage of such sewer. Evans v. Portland, 97 Me. 509; Breuck v. Holyoke, 167 Mass. 258, 45 N. E. 732; Buckley v. New Bedford, 155 Mass. 64, 29 N. E. 201; Ranlett v. Lowell, 126 Mass. 431.

TRIMBLE, J.—Plaintiff sued Kansas City for damages sustained by the alleged wrongful choking of a private sewer, with which plaintiff's property was connected, whereby the sewage therein was backed up into plaintiff's basement causing him to lose rent on his building, to expend money in removing the sewage and in endeavoring to keep it out, and damaging him in other particulars. The sewer was built merely to carry off sewage from the houses connected therewith and was not sufficient to take care of surface water. The choking was alleged to have been caused by the city connecting to said sewer certain catch basins or sewer inlets for the disposition of surface water, through which dirt, gravel, and other street refuse passed into said sewer and there accumulated in such quantities as to clog it.

The answer was a general denial, and, in addition thereto, the allegation was made that the private sewer in question was constructed and owned by the High Gate and the Linwood avenue Drainage Companies, (corporations), at a time when the territory in which the sewer was located was not in the city limits; that said private sewer emptied into a city district sewer which connected with other city sewers which, following the natural course of drainage, finally discharged into the Missouri river; that several years thereafter,

in 1897, the city extended its limits so as to take said territory into the city; that in the year 1900 the Board of Park Commissioners constructed catch basins at certain street corners for the purpose of carrying off surface water, but that said Park Board had no control over the sewers of Kansas City, and that the city never accepted said private sewer and the same has continued ever since to be a private sewer and owned by the Drainage Companies aforesaid.

The answer further alleged the insufficiency of the private sewer to carry off the surface water and sewage from the many houses and drains connected therewith at the time plaintiff attached thereto, which fact he knew, or ought to have known in the exercise of ordinary care; that at the time plaintiff connected with the private sewer there was a public sewer of greater depth and better flow immediately in front of his property; that instead of connecting with the public sewer, plaintiff improvidently, and in violation of certain pleaded ordinances, attached to said private sewer without getting either a permit from the city, or permission from the owner of the sewer, so to do, as required by said ordinances; that when the sewage in November, 1910, or at any time thereafter, came upon his property, the same was the result of his own unlawful and improvident connection with the private sewer, and could have been avoided at any time by disconnecting his property from said sewer, which he failed to do though fully aware of the effect of maintaining such connection.

At the close of all the evidence the court sustained defendant's demurrer, and the plaintiff thereupon took an involuntary nonsuit with leave to move to set the same aside. This motion was filed and overruled and plaintiff appealed.

There is no dispute as to the facts. The question is, do they show a right of recovery in plaintiff? If

187MoApp13

they do, the judgment should be reversed and the cause remanded. If they do not, the judgment should be affirmed.

A deed for the right of way of said private sewer was filed in the recorder's office of Jackson county, Missouri, on July 12, 1893, and the sewer was built by said Drainage Companies during that year. Four years later, in 1897, the city extended its limits so as to take in the territory through which said private sewer ran but the sewer was never accepted as a public sewer by any act of the city.

In 1900 the Board of Park Commissioners constructed a catch basin at each of four street corners so as to carry surface water from the streets.

Five years later, in 1905, plaintiff bought a lot fronting eighty-two feet on Troost avenue and running back west 194 feet along Van Trump Court. Later he bought a strip of ground immediately west of this lot, 100 feet wide, across which the private sewer ran and plaintiff's purchase was subject, of course, to said sewer right of way.

In the early part of 1910 plaintiff began the erection of a brick building on the first lot above mentioned, facing it on Troost avenue. At the time of preparing the foundation, he connected the proposed building with the private sewer, although there was a public sewer on Troost avenue immediately in front of the proposed building, which sewer was two feet lower than the private sewer and had a better fall. The slope of the ground was also toward Troost avenue at the site of the building. Plaintiff got no permission from the owner of the private sewer allowing him to attach thereto, nor did he get a permit from the city although there was an ordinance requiring such consent and permission before connecting with a private sewer. There was also an ordinance requiring him to connect with the public sewer. So that in connecting with said

private sewer plaintiff did not have consent of the owner thereof and violated both of said ordinances.

The building was finished about the first of November, 1910. Before this, however, the water in the private sewer had backed up and into plaintiff's basement till it was twelve inches deep, plaintiff's sewer opening being that distance above the floor. Notwithstanding this knowledge, he did not disconnect from said sewer but allowed such connection to remain and went on and finished the building and did nothing to connect with the public sewer immediately in front of him. Thereafter, at various times his basement became flooded, doing the damage sued for.

The private sewer was insufficient to carry off rain water, and often became stopped up. Sometimes it became stopped when there were no rain storms if something got in and choked it. When the sewer choked up, the city employees and officers, at plaintiff's request cleaned it out for him, and at such times leaves, gravel, and street refuse would be found therein. No act of the city was shown whereby it accepted or assumed control over the sewer in question as a public sewer.

It will be noticed from the foregoing that at the time plaintiff attached to said private sewer, the catch basins were connected with the sewer and had been for some years. In other words, the private sewer was in a condition to cause it to flood plaintiff's basement at the time he attached thereto; that his connection therewith was made without right or authority and was wrongfully done in violation of the two ordinances above mentioned. It will also be observed that before the building was completed and before any appreciable damage had occurred, plaintiff had notice that it would flood his basement but took no steps to cut loose therefrom. Furthermore, although certain city officers may have assumed to put catch basins in the sewer, and certain others cleaned the sewer out when requested

by plaintiff, yet no authoritative act emanating from the city itself was shown whereby it accepted or took over the sewer as a public sewer.

Under all these circumstances can the plaintiff hold the city liable for the damages sued for?

If the sewer was private, and never became a public sewer of the city, and the latter never gave permission to treat and use it as such, then the city was under no duty to maintain it open and free of obstructions. And if plaintiff's use of the private sewer was unlawful and without authority, then the city is not liable to plaintiff for choking it up by allowing dirt and refuse to get into it. The only way damage was caused to plaintiff was through his unauthorized and unlawful connection with and use of the sewer. Hence the choking of the sewer by the city was not a violation of any right of plaintiff since he had no right to its being kept open.

Plaintiff concedes in his brief that the sewer had never been anything other than a private sewer and that no acts on the part of the city have made it a public sewer. Consequently, there is no need of citing authorities to show that the mere acts of administrative officers, or of those acting without authority, can have no effect in making the sewer a public one, or create in the city a duty to maintain the sewer free and clear of obstructions.

Insofar as the liability of the city for constructing the catch basins is concerned, it should be observed that paragraphs 5 and 6 of article 3 of the city charter, 1889, give the mayor and city council exclusive power and control, by ordinance, over the streets, to put in drains and sewers, to establish sewers, keep them in repair *and regulate their use*. And section 10, article 6, of said charter commits to the Board of Public Works the duty of supervising the construction, alteration, and repair of receiving basins, sewers, drains, etc., within the city and the *issuing of permits for*

*connecting with any sewer pipe.* The Park Board, therefore, had no authority to put in the catch basins, and since the act of the Park Board in so doing was without authority, the city cannot be held liable for the construction of such basins. [Robinson v. Danville, 101 Va. 213.] Where there is no proof that the city authorized the putting in of the catch basins, the city cannot be held liable because they were put in. [Gleason v. Kirksville, 136 Mo. App. 521; Stewart v. City of Clinton, 79 Mo. 603; Koeppen v. Sedalia, 89 Mo. App. 648.]

However, plaintiff seems to be also resting his case upon the acts of the city in flushing its streets and sending the water used in this work into said catch basins thereby carrying leaves, gravel, and other street refuse into the sewer. Upon this feature of the case it should be observed that the sewer was insufficient to carry off surface water and the sewage of the many houses attached thereto (of which more than one belonged to plaintiff and the building in suit was an apartment house); and while the evidence showed that the sewer became choked at various times, it does not show whether at the times the damage was done the choking was caused by rainfall or by the flushing and cleaning of the streets by the city. But, however this may be, it need not be considered of vital importance, since the objection to plaintiff's recovery can be based on other grounds.

At the time of plaintiff's connection with the private sewer, there was in force an ordinance of the city requiring one who desired to connect with a private sewer to obtain the written consent of the owner thereof and attach it to the application to the city for a permit to connect therewith. This ordinance required a permit to be obtained and also made it the duty of the plumber and drain layer making such connection to return a plat to the city engineer's office showing how such was done, the exact location thereof, and that

it was in accordance with the city ordinances govern-
ing the subject. The ordinance declared that the in-
tention was to make all such work conform to the gen-
eral system of house drainage throughout the city so
that it would be sanitary and safe for the protection
of the public health, and made a violation of any of the
provisions of such ordinances a misdemeanor. There
was also another ordinance requiring one about to
erect a building to make connection with the public
sewer if one was in the street. There was a sewer,
as stated, in front of plaintiff's building which was
lower and had a better fall than the private sewer.
And, as stated, plaintiff violated both ordinances in
connecting with the private sewer, and no damage oc-
curred to plaintiff except from the water coming
through his unauthorized and unlawful connection
with the sewer. If the damage was caused in
part by the connection with the sewer made con-
trary to the city ordinances, plaintiff cannot re-
cover.    [Brenck v. Holyoke, 167 Mass. 258, l.
c. 264.]    In Buckley v. City of New Bedford,
155 Mass. 64, l. c. 67, it is said ''The plaintiff's cause
of action, if any, depends upon and springs out of
his right to connect his drain with the sewer. If that
connection was wrongful, he could not complain of
the consequences of making it. Unless he had a right
to open the sewer, the city did no wrong by keeping
it full of sewage and choked.''

But plaintiff insists that he had a right to con-
nect with the private sewer, and after assuming this,
compares himself to a person rightfully and peace-
fully in possession of property suffering a loss by a
trespass committed by another. But that is not the
true situation. It is not easy to see how it can be said
that plaintiff had a right to connect with the sewer
when he did not have permission either from the owner
or the city. Certainly the city had the right to legis-
late upon the subject of the use of private sewers and

the number of people who should be allowed to use them and where such use should be allowed; also to require persons to use the public sewers. The ordinances were police regulations which the city had a right to make and the plaintiff was required to obey.

As to the case being like one who, though a trespasser, is nevertheless in the peaceable possession of property and is damaged by the wilful act of a third party, we think it is vitally different in this respect: That in such case the damage comes *solely* from the wilful act of the third party, unmixed with any wrong on the part of the person damaged, as the cause thereof. But in the case at bar, the act of the city in flushing its streets would have caused no injury to plaintiff had it not been for his wrongful and unauthorized connection with the sewer. The city was performing a lawful act and not an unlawful one when it was flushing and cleaning its streets. If this work injured plaintiff, it did so only because of his unlawful use of the sewer.

In addition to all this, the facts show that the catch basins were put in and connected with the sewer long before plaintiff's connection was made; that the sewer with such basins existed for ten years prior thereto and during all that time surface water and refuse from the streets must have gone into the sewer. With the sewer in that situation and condition, plaintiff built his basement floor a foot lower than his sewer opening, so that if the sewer ever became stopped and the water did flow back into his basement it could not get out without being pumped out. And before the building was completed, the plaintiff knew, by actual experience, that the sewer would become stopped by heavy rains because that did occur and his basement was flooded to the depth of twelve inches. And yet, notwithstanding his complete knowledge of the condition and situation, and the fact that he could have connected with the public sewer in the street immediately

in front of his building, which in depth and fall was better than the sewer he was attempting to use, he continued to use and maintain his dangerous, unauthorized, and unlawful connection with the private sewer until he received the damage for which he sues. In the case of Buckley v. City of New Bedford, 155 Mass. 64, l. c. 67, the court remarks that: "After the original overflow, at least, the plaintiff had notice of how the sewer worked, and his remedy was in his own hands by stopping his drain." In the case of Sheriff v. City of Oskaloosa, 120 Iowa, 442, a property owner was not required to connect with a sewer but had permission and authority to do so. It was held that if it be conceded that when he connected with the sewer he was authorized to presume it was reasonably sufficient to carry off the ordinary water and sewage, yet his subsequent knowledge that it would not carry it rendered his continued connection therewith a matter of his doing so at his own peril. In the case at bar, as plaintiff had no right to connect with the sewer, surely he was not authorized to presume that it would be sufficient when he added to it his apartment house and possibly two other houses which he seems to have built. In the case of Hart v. City of Neillsville, 141 Wis. 3, a property owner had a right to connect with the sewer. The court held that as the plaintiff in that case saw clearly, at the time water and sewage first appeared in his basement, that the sewer would not work and was the cause of the mischief, and as the means of remedying the matter was in his own hands, he could not recover. The plaintiff in that case was in a much better position than is plaintiff in the case at bar, for here the plaintiff not only had no right to connect with the private sewer but he failed to connect with the public street sewer which was closer, deeper, and of better fall, and with which he was required to connect by the city ordinance. As he had no right to connect with the private sewer he had no

reason to presume that it was sufficient or that it would not clog up from surface water or dirt getting into it through the catch basins already existing in the sewer when he connected therewith. He made his connection without authority and therefore at his peril.

We are of opinion that the judgment should be affirmed. It is so ordered. All concur.