Bernard PROPER and May Agnes Proper; Wilma D. Thorne and Clyde L. Thorne; Walter Thomas and Vera Thomas; and Clarence W. McCalester and Fern O. McCalester (Plaintiffs), Appellants,

v.

CITY OF INDEPENDENCE, Missouri, a Municipal Corporation (Defendant), Respondent.

No. 22829.

Kansas City Court of Appeals.

Missouri.

Oct. 5, 1959.

Robert S. Burns, Kansas City, for appellants.

Gilbert R. Titus, John F. Thice, Independence, Walter A. Raymond, Kansas City, for respondent.

CAVE, Presiding Judge.

Plaintiffs sued the defendant for damages to their property resulting from the overflow of Rock Creek, a natural watercourse flowing east and west through said city. At the close of plaintiffs' evidence, the court directed a verdict for the defendant, judgment entered accordingly, and plaintiffs appealed.

The plaintiffs are the respective owners of four parcels of real estate located on Hawthorne Avenue, a north-south street in Independence, near Twenty-second Street. At this point, Hawthorne is intersected by Rock Creek. Prior to September, 1953, this stream had not been bridged at this intersection, but vehicles had used the rock botton of the creek for passage.

The petition is in four counts, but the material allegations of liability are the same. The parties describe the lots owned by each, and their location with reference to the intersection of Hawthorne and Rock Creek, and state that "during the year 1953, defendant *by duly passed ordinance of the City Council,* constructed a bridge on the aforesaid Hawthorne Avenue across the aforesaid creek and the defendant at all times hereinafter mentioned owned, maintained and operated said bridge; * * that the aforesaid bridge constructed by the defendant acted as a barrier to the aforesaid natural water course * * *, which the defendant knew or could have known by the exercise of ordinary care, and that as a direct result thereof, on

May 2, 1954, water and debris accumulated to the East side of said bridge and overflowed into the premises and into the dwelling house of these plaintiffs; * *"; resulting in damage. (Italics ours.)

Defendant's answer admitted that it was a municipal corporation; that Hawthorne Avenue was a public street; that Rock Creek was a natural watercourse flowing through the city; but denied that the city council had passed an ordinance authorizing the construction of the bridge. The answer also alleged that the overflow was caused by an unprecedented rainfall and not due to any negligence of the defendant.

At the close of plaintiffs' evidence, defendant moved for a directed verdict on three grounds: "(1) That plaintiffs have failed to prove that construction of the bridge mentioned in evidence was authorized by a duly passed ordinance of the City of Independence; (2) that plaintiffs have failed as a matter of law to prove that the defendant * * * constructed and maintained a nuisance; (3) that plaintiffs have failed to prove that the bridge * * * was the proximate cause of plaintiffs' damage, if any." This motion was sustained by the court without specifying the ground therefor.

The first point presented by the respective briefs is whether the failure of the city council to pass an ordinance authorizing the construction of the bridge relieves the city of liability for damages resulting, if so, from such construction.

Plaintiffs contend that the passage of an ordinance was unnecessary, although they alleged one had been passed, because "when a city undertakes the work of constructing or maintaining city streets, of which the bridge across Rock Creek was a part, the city is acting in its ministerial capacity * * *. The act of constructing a bridge as a portion of the city streets by the defendant was not an unlawful or prohibited act, but instead was a lawful and authorized exercise by the city of its min-

isterial powers, though done in an unlawful manner due to the failure to pass an ordinance authorizing the construction of the bridge." Citing in support thereof, Ely v. City of St. Louis, 181 Mo. 723, 81 S.W. 168; Carruthers v. City of St. Louis, 341 Mo. 1073, 111 S.W.2d 32; Cook v. Kansas City, 358 Mo. 296, 214 S.W.2d 430, 431; Lucas v. City of Louisiana, Mo.App., 173 S.W.2d 629; and Donahoe v. City of Kansas City, 136 Mo. 657, 38 S.W. 571; Donahew v. City of Kansas City, 136 Mo. 657, 38 S.W. 571.

The city contends that in determining whether a bridge be constructed, and also authorizing its construction, it is acting in its governmental capacity, not ministerial, and must so act by the passage of an ordinance. Citing, Gleason v. City of Kirksville, 136 Mo.App. 521, 118 S.W. 120; Bigelow v. City of Springfield, 178 Mo.App. 463, 162 S.W. 750; Jones v. City of Caruthersville, 186 Mo.App. 404, 171 S.W. 639; Van Trump v. Kansas City, 187 Mo.App. 190, 173 S.W. 32.

It is conceded that Independence is a city of the third class, and that there was no ordinance passed authorizing the construction of the bridge.

With reference to the authority or steps taken for the construction of the bridge, plaintiffs' witness, Robert P. Waddell, who was the City Engineer of Independence, testified that his department drafted the plans for the bridge at the request of the "street and alley committee and the mayor * * *"; that the bridge was "erected by a contractor due to the city's initiative; * * * Q. And the city paid the contractor for it? A. I don't know about that." He stated that the main span of the bridge was 50 feet long; that it consisted of a rock and concrete base with nine 30-inch pipes laid on the creek bed and rocked in; that the bridge floor was 3 feet 9 inches above the creek bed; and that the "railings" on the sides were 9 inches high.

Plaintiffs also offered testimony tending to prove that, prior to the construction of the bridge, Rock Creek never overflowed their respective properties, but that on the night of May 2, 1954, after substantial rains, debris of all kinds washed up against the bridge and railings on the east side, piling up to a point several feet above the railings; that the bridge and debris obstructed the natural flow of the water, causing it to overflow the banks and flooding their lawns, basements, garages and houses; that prior to the date of this overflow, defendant's street employees had, on several occasions, been present during high waters and had stood in the rain to keep the debris from collecting against the bridge and railing and had used street equipment to remove brush and other debris from the bridge on four or five occasions prior to the May 2d overflow. However, plaintiffs' evidence was that there had been no overflow on their property between the time the bridge was constructed and the May 2d flood.

We first discuss the question whether the construction of the bridge was of such a nature and extent that it required the passage of an ordinance or resolution by the city council authorizing the same. As stated, Rock Creek is a natural water course flowing through the city and intersecting one of its streets. Section 77.140 V.A.M.S., 1949, provides: "The council may establish, alter and change the channel of watercourses, and wall them and cover them over, and prevent obstructions thereon, * * *". Section 88.507 grants certain powers and authority to cities of the third class, among which is the construction of "bridges and culverts". Clearly, these sections give a city of the third class certain jurisdiction over natural watercourses flowing through the city (which authority is lodged in the city "council"); and the right to bridge the same.

■ The general rule is that the authorization of a public improvement by the municipal authorities must be by an order in some form; and, when the power to make improvements is conferred in general

terms, the municipal corporation may exercise the power only by a formal legislative action on the part of the city council. 63 C.J.S. Municipal Corporations § 1104, p. 766; Austin Western Road Machinery Co. v. City of New Madrid, Mo.App., 185 S.W.2d 850; City of Flordell Hills v. Hardekopf, Mo.App., 271 S.W.2d 256. However, this rule does not prevent temporary or ordinary work and repair of streets being done without specific authority, and cases discussing such repairs are not authority for the question before us.

The construction of this bridge was a substantial public improvement, not a mere repair or maintenance of a street.

■ It is our conclusion that authorization for the construction of the bridge should have been by legislative action of the city council. We think this conclusion is supported by Gleason v. City of Kirksville; Bigelow v. City of Springfield; Jones v. City of Caruthersville; Van Trump v. Kansas City; and Ely v. City of St. Louis; all cited supra.

The legal principles which protect a city from tort liability for the unauthorized acts of its officers are clearly stated in Hinds v. City of Hannibal, Mo.Sup., 212 S.W.2d 401, 402, where it is said: "Immunity from tort liability for acts of public officers in the exercise of governmental functions is not retained in this country to perpetuate the idea that the king can do no wrong, as plaintiff suggests. The principal reason for it is that the general rules of respondeat superior cannot be applied to public officers without opening up unlimited possibilities for wasteful and dishonest dissipation of public funds. Brown v. City of Craig, 350 Mo. 836, 168 S.W.2d 1080. Public funds are trust funds and public policy does not permit them to be diverted from the purposes for which they are raised by taxation. This is analogous to the rule which exempts charitable trusts from tort liability. See Dille v. St. Luke's Hospital, [355 Mo. 436] 196 S.W.2d 615 and cases

cited. Any change in this situation must be made by the Legislature, as has been done in providing for tort claims against other states and the Federal Government, because only the Legislature could prescribe all regulations and limitations necessary to protect the public interest and provide the fiscal basis for payment of such claims."

■ The plaintiffs seek to escape the effect of the necessity for legislative action authorizing the construction of the bridge on the theory that the construction was not "an unlawful and prohibited act, though done in an unlawful manner due to the failure to pass an ordinance authorizing the construction." This is on the theory that the construction was an exercise of the city's "ministerial powers". Citing Cook v. Kansas City, supra; Lucas v. City of Louisiana, supra; and Donahoe v. Kansas City, supra. We hold that the authorization for the construction of the bridge requires legislative action and is not ministerial in the same sense as the repairing and maintenance of constructed streets.

In the Cook case, the court was considering a suit for damages to property resulting from blasting during the construction of a sewer by the city. The court said (214 S.W.2d 432): "The construction of sewers in Kansas City is a ministerial act and 'inasmuch as it was acting within the general scope of its power in constructing the sewer, it was doing an act in its nature lawful, although done in an unlawful manner' ". Citing in support of this, Donahoe v. Kansas City, supra. The Donahoe case held (136 Mo. 667, 38 S.W. 573): "The sewers of the city are its private property. The citizens are alone interested in them the general public of the state at large has no interest in them, any more than they have in waterworks when owned by a city, by which its citizens are supplied with water; and *in this very important particular differ from the streets of the city,* which are for the benefit of the public generally. *The construction of the sewer being ministerial,* can the city escape liability to plaintiff for

the injuries sustained by him while working in the sewer upon the ground that its charter * * * provides that the construction of the sewers shall be let out by contract to the lowest bidder, when, in this case, the construction was done by the city under what is assumed by the plaintiff to be its general powers?" (Italics ours.) The city was held liable because the construction was ministerial, but done in violation of its charter requiring that such contracts be let to the lowest bidder. The Donahoe opinion quotes with approval from Johnston v. District of Columbia, 118 U.S. 19, 21, 6 S.Ct. 923, 30 L.Ed. 75, as follows: "But the construction and repair of sewers according to the general plan so adopted, are simply ministerial duties, and for any negligence in so constructing a sewer or keeping it in repair the municipality which has constructed and owns the sewer may be sued by a person whose property is thereby injured."

It appears to us that the Cook case is not authority for plaintiffs' contention that the construction of a bridge across a natural watercourse is merely a ministerial or corporate act, and may be done by a city employee without an ordinance authorizing such construction.

In Lucas v. City of Louisiana, supra, the city had used a natural watercourse flowing through the city as a part of its sewer system, and in conjunction with the Federal CWA had constructed a rock wall along the bank of the stream without passing an ordinance authorizing the same. Several years later, this wall deteriorated and a portion of it fell into the stream, thereby obstructing the natural flow of the water, resulting in flooding adjacent property. The plaintiff, on many occasions, notified the city of the condition and demanded the removal of the obstruction, which was not done. The city contended that it was not liable because an ordinance had not been passed authorizing the construction of the wall. The court said (173 S.W.2d 634): "Regardless of what might be said with respect to the

necessity of the existence of an ordinance to authorize the defendant city in the first instance to construct the stone wall within the City Branch, we believe that, under the facts shown in this record, it certainly was not necessary for the city to have passed an ordinance authorizing it to remove the obstruction, caused by the fallen wall in said branch, before it could be held liable for damages resulting from such obstruction." The court recognized the general rule requiring an ordinance for the improvement of streets, but distinguished such cases by stating (173 S.W.2d 634): "Defendant cites a large number of cases holding that an ordinance must be passed by a city authorizing work to be done as a prerequisite to its liability for damages in connection with such work. There can be no doubt about the soundness of that rule nor of its applicability to the facts in said cases. That rule protects a city from imposition where it is sought to hold it liable for acts of its officers or agents which are outside the city's lawful sphere of activity, or *where the city's officers or agents have assumed to undertake to make an improvement without being authorized, in the only way the city could lawfully do the particular work, namely, by an ordinance.* Such rule, however, has no application to the facts of this case. Most of the cases cited by defendant deal with damages arising from the establishing, grading or improving of a street. This is not such a case. We are dealing with a natural watercourse over which, according to the evidence, defendant city could lawfully and did exercise control. Defendant had warning and notice that a dangerous obstruction was in said water-course. It was even urged to remove the obstruction. It had ample time to have done so and thus could have avoided the damage. It did nothing to remedy the condition, although it had the power and authority to do so, and the damage occurred. * * *" (Italics ours.) The city was held liable for failure to remove the obstruction after frequent notice and demand. This opinion does not con-

flict with our conclusion that the construction of the bridge should have been authorized by legislative action by the council. It recognizes that officers or employees of a city cannot be given a free hand to make public improvements without being authorized to do so by the city council.

However, plaintiffs also contend that even if it be held that an ordinance should have been adopted authorizing the construction of the bridge, nevertheless the city, after the construction, used, maintained and operated the bridge as a part of one of its public streets and had knowledge that the bridge, as constructed, was impeding the flow of the water in the creek, and that at substantial rainfalls, debris would accumulate at the bridge and would likely cause the stream to overflow and flood plaintiffs' property; and that it had such knowledge in time to have removed such danger prior to the flood of May 2d; and under such circumstances, the city maintained a nuisance, consequently the plaintiffs may recover on that theory. The city contends that the plaintiffs brought and tried the case on the theory that the city had *negligently* constructed the bridge and cannot now claim the right to recover on the theory of maintaining a nuisance.

■■■ Of course, nuisance and negligence are different kinds of torts, not only in legal classification, but in their essential features. Negligence is not a necessary ingredient of the wrong of maintaining a nuisance. If a nuisance exists, the question of whether the wrongdoer was careful or negligent in the manner of its maintenance is wholly immaterial. For a full discussion of the distinction between negligence and nuisance, see Pearson v. Kansas City, 331 Mo. 885, 55 S.W.2d 485, 489.

■■ It is well-settled law that a plaintiff cannot recover upon the theory of maintaining a nuisance unless that issue is pleaded and supported by the evidence. Pearson v. Kansas City, supra; Gleason v. City of Kirksville, 136 Mo.App. 521, 118 S.W. 120. In the Gleason case, this court was discussing issues and facts quite similar to those in this case, and where the plaintiff was making the same contention as the plaintiffs are making here. We held that failure to pass an ordinance relieved the city of liability "for erecting or constructing the work". But the plaintiff claimed there, as here, that the work became a nuisance, and that the city permitted it to remain and continue and by so doing, the city became liable for maintaining a nuisance. Of that contention it was said: "The difficulty with plaintiff's case is that, as decided by the Supreme Court, for the continuance of a nuisance by one not originally responsible for its erection, there must be allegation and proof of a notice or request to abate it, and neither appeared in this case". Citing authorities.

■■ Plaintiffs' petition clearly alleges the negligent construction of a bridge authorized by ordinance. We hold that they are not entitled to recover on that theory. However, the evidence is persuasive that plaintiffs might plead and make a submissible issue of the maintenance of a nuisance. The question presents itself as to what disposition should be made of this case under the circumstances. Because of the complexity of the law on the question of a municipality's liability for improvement of its streets; and because the courts have frequently said that there is no clear line of distinction between governmental and ministerial functions of municipalities, we believe this cause should be remanded. The older cases would not permit this to be done. But one of the broad purposes of our new civil code is to dispose of litigation in a way that will accomplish justice.

In East v. McMenamy, 266 S.W.2d 728, where the trial court had sustained a motion for a directed verdict, as in this case, the supreme court remanded the cause for the reason that (732): "The furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts

are such that a recovery cannot be had; and even though the plaintiff fails to substantiate the theory upon which his case was tried, if he nevertheless shows a state of facts which might entitle him to recover if his case were brought upon a proper theory, the judgment will not be reversed outright, but instead, in the exercise of a sound judicial discretion, the case will be remanded to give him the opportunity to amend his petition, if so advised, so as to state a case upon the theory which his evidence discloses." This liberal principle was quoted with approval by the supreme court in Yarrington v. Lininger, 327 S.W.2d 104.

In the exercise of our discretion, we reverse the judgment and remand the cause so plaintiffs may plead the essential elements of a cause of action for maintenance of a nuisance, if they so desire.

All concur.