FRANK HART REALTY COMPANY, a Partnership,
Composed of FRANK HART et al., v. GEORGE
L. RYAN, Appellant.

Division One, June 6, 1921.

1. **ORAL CONTRACT: Sale of Lands: Full Performance: Agent's Commission.** An oral contract to sell a designated tract of land at a designated price for an agreed commission is fully performed when the agent produces purchasers who are ready, able and willing to purchase at the stipulated price; and when that is done the agent's agreed commission is due, as much so as if the seller executed the deeds and received the money. The performance of such a contract is not dependent upon the acceptance of the purchasers by the seller, nor upon his change of mind as to the price after the purchasers have been produced by the agent.

2. ————: ————: **Substituted Contract.** When the agent produced a buyer for the land, ready, able and willing to buy at the stipulated price, and the seller demanded more and refused to sell, the contract was breached, and the transaction at an end. If thereafter another agency contract was substituted, recovery by the agent for his commission must be under the last or substituted contract. But in this case, there was no agency contract substituted for the prior contract fully performed by the agent.

3. ————: ————: ————: **Attempted Adjustment.** Where the agent produced buyers able, ready and willing to buy at the stipulated price, and the seller demanded a higher price and refused to sell, and thereupon the agent notified him that his commission was due, and thereupon the seller agreed to take the original stipulated price, but one of the buyers refused, and the agent then agreed to take his place as a purchaser, upon condition that he was to receive credit for a certain amount for what he had previously done, but said agreement failed, there was not a substituted agency contract, but an attempted purchase by the agent and the two others, and an attempted adjustment of the amount due the agent from the seller under the agency contract; and that attempted adjustment, having failed, does not prohibit the agent from recovering his commissions already due under the fully performed agency contract.

4. ————: ————: ————: **Erroneous Instruction.** Where plaintiff's first instruction, in accordance with the petition and the contract

alleged, asked for a definite sum on the theory that the agency contract to sell had been fully performed, his second instruction based on the theory that under a subsequent adjustment contract he was entitled to a less sum, which was not pleaded and evidence of which went in without objection, was erroneous, because outside of the scope of the pleadings, but it was harmless, since the jury returned their verdict under the first instruction for the amount due under the agency contract.

5. **JUROR:** Qualifications: Matter of Exception. Testimony heard in support of an issue raised for the first time in the motion for a new trial, to the effect that a juror had married a niece of one of the plaintiffs, is not different from affidavits in support of the same kind of an issue, and cannot avail. The qualification of a juror is a matter of exception, and if no inquiry is made concerning his relationship to the parties at the time of his examination, and no objection is made or exception saved, the verdict cannot be overthrown by evidence in support of the motion for new trial, although under the statute he should have been excused if objection to his qualifications had been timely made.

Appeal from Stoddard Circuit Court.—*Hon. W. S. C. Walker,* Judge.

AFFIRMED.

*Wammack & Welborn* for appellants.

(1)   Do the undisputed facts constitute an abandonment, a modification or a substitution of the so called Monday sale for the one claimed to have been made on Saturday? It is our contention that they do, and if so, the judgment can not stand, for it is the law that under such a state of facts the plaintiff must declare on the modified or substituted contract and predicate recovery thereon.   Carman v. Harrah, 182 Mo. App. 376; Gifford v. Willman, 187 Mo. App. 38; Car Co. v. Mill Co., 227 S. W. 74. (2) The mere substitution of one contract for another is a sufficient consideration to support the new contract. Welch v. Mischke, 154 Mo. App. 735; Koslosky v. Bloch, 191 Mo. App. 260; Smith v. Crane, 169 Mo. App. 708. (3) The question of a modified or substituted contract is for the court to determine as it involves a question of pleading.

*J. L. Fort* for respondent.

(1) .The doctrine of altered or modified contracts has no application to an executed or performed contract.  Car Co. v. Mill Co., 227 S. W. (Mo.) 74; 13 C. J. 590; Henning v. Company, 47 Mo. 431; Lanitz v. King, 93 Mo. 519; Brigham v. Company, 220 S. W. (Mo.) 915.  The contract between respondents and appellant by which appellant promised to pay respondents a commission if they would find a purchaser for his land ready, able and willing to buy the same, was fully performed on Saturday, and their commission was earned when they found Sherwood, Minton and Thompson as purchasers and brought them face to face with appellant.  (2)  There was nothing in respondents' pleadings justifying the giving of evidence or instructions respecting the Monday transactions.  State v. Ellison, 270 Mo. 654, 195 S. W. 724;  Martin v. Company, 227 S. W. 132;  Wenzlick v. Company, 224 S. W. 60;  Hassenbach v. Kleissle, 224 S. W. 75;  Smith v. Black, 231 Mo. 690. The cases above cited hold that jurisdiction is the right to decide points in issue under the pleadings—not issues outside of the pleadings.  This being true, yet both appellant and respondents gave evidence and asked and received instructions from the court relating to the effort to sell this land on the following Monday.  The evidence thus offered was not objected to by either appellant or respondents, and on the issue of the efforts made on Monday to sell this land respondents were beaten and they have not appealed, and they are entirely unable to see upon what principle appellant may now, in this court, derive any advantages from the errors which he, along with respondents, invited the trial court to commit, and in which appellant came out in the flying colors of victory.

GRAVES, J.—Because of diverse views entertained by the judges of the Springfield Court of Appeals, this cause reaches us upon certification from that court. The plaintiff is a co-partnership engaged in the sale of

real estate. Defendant owned 458 acres of land near Dexter in Stoddard County. The diverse views of our learned brothers of the Court of Appeals call for the real issues in the case, as such issues are made by the pleadings. After alleging the co-partnership of plaintiff, giving the names of the co-partners, and describing the real estate, owned by defendant, the petition then proceeds:

"That on or about the—day of May, 1917, the plaintiff entered into a contract with the defendant, not in writing, whereby it was agreed that if plaintiff would procure a purchaser for the defendant's said real estate, which was located about one quarter of a mile in a southeastern direction from said City of Dexter, he, the defendant, would pay the plaintiff two and one half per cent of the amount realized on the sale of said real estate, and at $125 per acre, there being 458 acres of said real estate, and at $125 per acre would amount to $57,250, and that two and one half per cent of said amount amounts to $1,431.25.

"That after the making of said contract the plaintiff immediately went to work to procure a purchaser for said farm, who was ready, able and willing to purchase the same at the agreed price and sum of $57,250, and that plaintiff did, on the 13th day of May, 1918, secure a purchaser for said farm, who was ready, able and willing to pay the defendant the sum of $57,250, for said farm on such terms and conditions as the defendant had agreed to sell the same, in consequence of which there became due from the defendant to the plaintiff the sum of $1,431.25, which sum is now due and owing by the defendant to the plaintiff, and payment whereof has been refused by the defendant, though he had been requested to pay the same to the plaintiff.

"Wherefore, plaintiff prays judgment against the defendant for the sum of $1,431.25, with six per cent interest thereon from the 13th day of May, 1919, together with costs of suit."

The answer was a simple general denial. Plaintiff had a verdict for the sum of $1,425, upon which a judgment was entered. From such judgment the defendant appealed.

I.   It is admitted by defendant that the plaintiffs were at one time authorized by him to sell the lands for him at $125 per acre, and that he agreed to pay the commission of two and one half per cent upon the aggregate amount of sale. He lived in Indiana, and came to Dexter shortly after receiving a telegram notifying him that the land had been sold. Whilst admitting that plaintiff had been authorized to sell the land at $125 per acre on an agreed commission of two and one half per cent, the defendant urged that the authority had been withdrawn some time before the sale. This therefore became a controverted point. Defendant arrived at Dexter, on Thursday, and the three men who had been procured as purchasers by plaintiff were ready and willing to buy at the stipulated price, but defendant demanded $60,000 for the land. This was upon Saturday, and this sale was lost through the act of the defendant. In the record and briefs this is called the Saturday transaction.

On Monday plaintiffs notified defendant that inasmuch as buyers (who were ready and willing to buy, and who were responsible) had been found, he would have to pay the commission. In this situation, defendant told plaintiffs to see their prospective buyers, and that he would take the price of $125 per acre, or $57,250, instead of  the $60,000  demanded by  him Saturday. Plaintiff failed  to get one of the  three parties (who were ready and willing upon Saturday) to further consider the trade.  According to plaintiffs' evidence it was then agreed that the plaintiff firm should take the place of the third purchaser, and that the land was to be divided, and each purchaser was to be only liable for his part.  Further plaintiff firm was to have credit on their purchase for $1000 for what they had done. This sale

fell through, according to the view of plaintiffs by rea-
son of the fact that defendant demanded that the three
purchasers should stand responsible for the whole of
the land, and not for their respective shares. This was
also a controverted question. In the record, this latter
deal is denominated the Monday's transaction. This
sufficiently covers the facts for the questions involved.

II.    The majority opinion of the Court of Appeals
affirmed the judgment. The dissenting judge took the
view that by the Monday's transaction there was a sub-
stituted contract, and for that reason there could be no
recovery on the refusal of defendant to sell on Saturday
at the price of $125 per acre. The general
rule of law is, that where one contract has
been submitted for another, the recovery must
be under the substituted contract. This, because the
rights of the parties would be measured by their last
agreement. In the case at bar, the question is whether
or not the facts show a substituted contract. The
petition clearly declares upon an agreement to sell this
farm at $125 per acre for a commission of two and one
half per cent. Such a contract is fully performed when
the real-estate agent procures purchasers, who are ready,
able and willing to purchase at that price. The per-
formance of such contract is not dependent upon the
acceptance of the purchasers by the seller, nor is it de-
pendent upon his change of mind as to the price per
acre, after such purchasers have been produced by the
commission of the real-estate agents were as fully earned
that defendant made such a contract of agency with
plaintiffs, and further tending to show that plaintiffs
performed their part of the agency contract by pro-
ducing purchasers ready, able and willing to purchase,
and judging from the verdict the jury believed this evi-
dence. But when the defendant raised the price to
$60,000, these purchasers declined to buy. This ended,
at least for the time, that transaction. It was a closed
transaction, when upon Saturday, the defendant de-

*Substituted Contract.* [margin note]

288 Mo.—13

clined to take $125 from the three purchasers.    The commission of the real-estate agents were as fully earned then, as if the defendant had made the deed or deeds and received the money.

Counsel for defendant urge here (although no such contention was made in the Court of Appeals) that there was a substituted contract made on Monday.    This contention here was the outgrowth of the views of the dissenting judge in the Court of Appeals.    Whether or not there was a substituted contract might be raised by the simple general denial, but it would have been fairer tactics to have pleaded it by way of defense. We need not discuss the pleadings, because the evidence went in as to both transactions, and in without objection, so far as the printed abstract shows.    Evidence as to the Monday's transaction came from both sides.    Considering all the facts there was no substituted contract in this case.    We must not confuse the two attempted land contracts, or contracts of sale with the agency contract between plaintiffs and defendant.    The original contract was, that if plaintiffs sold defendant's land for $125 per acre, they were to have a commission of two and one half per cent of the selling price. This was the agency contract, and the contract sued upon herein.    This contract was fully performed on Saturday when the purchasers were produced.    Does the Monday's doings consstitute a new agency contract? We think not. Let us take the facts for a moment. Plaintiffs notified defendant that claimed their commission, or would claim it.    In this position he asked them to get their three purchasers together, and he would close the deal at $125 per acre, the sale that he repudiated on Saturday.    The agents found that one of their three men was not then willing to buy, and this new contract on Monday, was not an agency contract to sell land, but a contract to sell between buyers and sellers.    In the Monday transaction the present parties plaintiff were purchasers, and according to their version were to receive $1000 on their purchase price, by reason of what they had done before.

In other words the defendant was on the ground selling his lands himself, and his former agents were becoming purchasers of a part of the lands, and as part payment they were to be allowed $1000. This falls short of a substitution for the original agency contract. Had this last sale gone through it would have amounted to an adjustment of the amount due under the agency contract, but as it did not, it can in no way effect it. The facts fail to show a substituted agency contract. At most the Monday's transaction shows an attempted purchase from defendant of his land by his former agents, and two others. What he agreed to allow them under the agency contract, in this attempted contract of sale. can not bind them here, because the purchase failed.

III.    As suggested the evidence of the Monday's transaction came from both sides, and came in without objection. In fact the printed record shows no objection to the introduction of evidence. For the plaintiff the case went to the jury upon two instructions. The **Harmless Instruction.** first placed the case to the jury under the petition, and the contract therein pleaded. The second was based on the theory that the plaintiffs were entitled to $1000 for the alleged sale on Monday. Defendant's instructions took advantage of the evidence introduced as to Monday's transaction, on the theory that the purchasers must be such as would buy the place as a whole, and be responsible for this contract collectively, and not otherwise.

It is urged that this second instruction was beyond the scope of the pleadings, and this is true. It was based upon an unpleaded agreement, but was it harmful? Defendant did not object to all this Monday's transaction, evidently upon the theory that it tended to show a failure of plaintiffs in furnishing purchasers who would contract for the farm as a whole and be collectively bound on the contract, and defendant availed himself of this evidence in carefully wording his instructions. It is clear that the jury found under the contract pleaded, and not under this

second instruction which limited the right of recovery to $1000. So neither the instruction nor the evidence upon which it was based influenced the jury. It is not every improper instruction which works harm, and this one does not appear to have worked harm. They followed the first instruction (which was clear cut and concise upon the contract pleaded) and the evidence given in support of it. Defendant did not ask an instruction upon the substitution of contracts, but made a general fight against any and all liability. Under the facts we feel constrained to hold that the broadening of the issues by this instruction (done without objection) was at least harmless, and we so rule.

IV. As a last contention it is urged that one of the jurors selected to try the case had married a niece of one of the plaintiffs. This juror, had the fact appeared on an examination of the jurors, should have, and no doubt would have, been excused by the court. [Sec. 7283, R. S. 1909, the statute then in force.]

Juror.

The record shows no examination of the jury by counsel. By this we mean the record of the case prior to the the motion for new trial. For the first time the qualification of this juror was raised by the motion for new trial. The court heard evidence upon the issue made in this motion. From this evidence it appears that appellant's counsel asked no question when the jurors were being qualified, nor does it appear positively that plaintiffs' counsel asked any questions of them as to their relationship. It is made clear that neither counsel for plaintiff nor defendant knew of the relationship. This evidence on the motion we have given as a gratuity. The qualification of a juror is a matter of exception, and there was no exception saved to the selection of this juror on the panel of jurors. [State v. Brewer, 109 Mo. l. c. 652; City of Tarkio v. Cook, 120 Mo. l. c. 11.]

Evidence heard in support of an issue thus raised for the first time in a motion for new trial, is not different in effect from affidavits in support of the same kind of an

issue.  We have universally ruled that the question can not be presented in this way, but on the contrary that it is a matter of exception.

The foregoing concludes the substantial points made in this appeal.  There being substance in none of them, it follows that the judgment should be affirmed, and it is so ordered.  All concur.