CHARLES R. COOK and MINNIE K. COOK, Respondents, v. KANSAS CITY, MISSOURI, Appellant.—No. 40528.—214 S. W. (2d) 430.

Division Two, September 13, 1948.

Motion for Rehearing or to Transfer to Banc Overruled, November 8, 1948.

*David M. Proctor,* City Counselor, *Henry Arthur* and *John J. Cosgrove,* Assistant City Counselors, for appellant.

*John W. Hudson* and *Frank M. Robison* for respondents.

[431] BARRETT, C.—This is an action for damages for injuries to the plaintiffs' residence. The injuries are alleged to have been caused by blasting. The jury, by a nine to three verdict, found for the plaintiffs and assessed their damages at $25,000. The trial court reduced the verdict to $10,000 and the city appeals.

[432] The controversy arose out of the construction in 1938 to 1939 of a W. P. A. sponsored sewer on State Line Road. Kansas City sponsored the project, furnishing the materials and supplies, including dynamite and certain professional services and W. P. A. furnished the labor. The proposal and request for the project were signed by the Assistant Director of Public Works at the request of the Director of Public Works who was also the W. P. A. director for the State of Missouri. The original arrangement for the project was made by the then City Manager. The city's sewer engineer furnished the "elevation limits" and located the places manholes were to be dug. The blasting occurred in the process of sinking the manholes through shale and rock. It was not only admitted that the city complied with its part of the arrangement and furnished the materials but it was also admitted that the city officials had knowledge of the blasting. There was no written contract, no declaration of necessity, no publication and public hearing, no perfection and adoption of plans and specifications, no calling for bids or award to the lowest bidder and no ordinance confirming the contract in accordance with the provisions of the city charter and, therefore, it is urged that the action of the city in building the sewer was ultra vires and void. The action of the council being ultra vires, it is argued that the city is not liable for the tort and that the court erred in not directing a verdict for the city.

There can be no doubt concerning the general rules and there is no disposition now to modify them. Municipalities, whether reasonably or unreasonably (3 Mo. L. R. 275), have some immunity in tort actions. 6 McQuillin, Municipal Corporations, Sec. 2771. They are not liable, generally, when the power or duty invoked is a governmental function as distinguished from a corporate power or duty or, where the act complained of is beyond the power of the city and is therefore ultra vires in the strict sense of that term (38 Am. Jur., Sec. 582, p. 277) or when the person acting is not an agent of the city. 6 McQuillin, Municipal Corporations, Sec. 2774. But this case does not fall in any of those categories. The contract cases (Donovan v. Kansas City, 352 Mo. 430, 175 S. W. (2) 874, 179 S. W. (2) 108; Kansas City v. Rathford, 353 Mo. 1130, 186 S. W. (2) 570), as the cases themselves point out, do not govern in tort actions. In Kennedy v. City of Nevada, 222 Mo. App. 459,

281 S. W. 56 and Rowland v. City of Gallatin, 75 Mo. 134, it was specifically pointed out that the act complained of was "not within the scope of the corporate powers as prescribed by the charter of the city or by positive enactment."

It is conceded by the city that in constructing the sewer it was carrying out one of its authorized functions even though it was doing so in an irregular manner. The act itself was not unlawful or prohibited, it was lawful and authorized though done in an unlawful manner. Hunt v. City of Boonville, 65 Mo. 620. The act, though irregular, was well within the scope of its authority. Foncannon v. City of Kirksville, 88 Mo. App. 279; Dooley v. Kansas City, 82 Mo. 444. In this instance, a W. P. A. project, there was no necessity for bids or for notice and hearing even though the project should have been authorized by ordinance. The construction of sewers in Kansas City is a ministerial act and "inasmuch as it was acting within the general scope of its power in constructing the sewer, it was doing an act in its nature lawful, although done in an unlawful manner." Donahoe v. Kansas City, 136 Mo. 657, 668, 38 S. W. 571. The city, aware of the force of these cases, attempts to distinguish them on the grounds that (1) the acts complained of were allowed to exist after the alleged ultra vires act so as to constitute negligence separate and apart from the ultra vires act or (2) were instances in which there was no mandatory charter prescribing how the work should be done or no prohibition against doing the work, except in a particular way. It may be possible, in one sense, to make these distinctions in the cases but so far these refinements have not been engrafted on the law of municipal corporations. In short, on its facts and on principle, this case falls within these latter general rules and Lucas v. City of Louisiana, (Mo. App.) [433] 173 S. W. (2) 629; Windle v. City of Springfield, 320 Mo. 459, 8 S. W. (2) 61 and Donahoe v. Kansas City, supra. See also: Stocker v. City of Richmond Heights, 235 Mo. App. 277, 132 S. W. (2) 1116 and 6 McQuillin, Municipal Corporations, Secs. 2786-2787, 2796, 2808. In these circumstances the city's motion for a directed verdict was properly denied.

This brings us to the appellant's assignment that the court erred in refusing to grant a new trial because of the misconduct of a juror in failing to reveal on voir dire his personal knowledge of the blasting and in his revealing such knowledge and discussing the fact with other jurors. This assignment presents two problems, the first concerning his qualification or competency because of his knowledge and second concerning his misconduct in revealing his knowledge to other jurors.

On voir dire counsel plainly inquired whether any member of the panel had personal knowledge of the cause, particularly of the blasting. No one on the panel responded, thereby indicating that

no one had personal knowledge of the incident complained of. One of the jurors was a young man who eight years prior to the trial, 1938-1939, was a student at Pembroke Day School. When he qualified as a juror he did not then remember the sewer project and the blasting but after hearing the first day of the trial his memory was refreshed and he remembered, when he was a student, that he had heard the blasting on State Line Road and had gone down to the street where the work was in progress and had closely observed the blasting. Upon reporting for the second day of the trial he informed the court that his memory had been refreshed and that he did have personal knowledge of the blasting. It is upon this fact that the appellant bases its assignment that the juror was guilty of misconduct in qualifying on voir dire. But the juror's personal knowledge of the blasting bears upon his qualification or competency (31 Am. Jur., Sec. 142, p. 664) and, obviously, the juror was not initially guilty of misconduct when he failed to answer that he had personal knowledge. 50° C. J. S., Sec. 276(e), p. 1059. Because of his personal knowledge the juror was disqualified but upon this record the real question is whether the appellant waived the disqualification. Appellant's counsel, in effect, contends that it had no notice or knowledge of the juror's disqualification until after the verdict. But the trial court and counsel for the respondents say that as soon as the juror told the court his memory had been refreshed that the court informed counsel on both sides of the circumstances and it was at least tacitly agreed or understood that the trial might nevertheless proceed. Appellant's counsel do not remember that the court informed them of the circumstance. But in the face of the trial court's positive assertion that he did inform counsel we must, of necessity, accept the court's view of the matter in the absence of a record demonstrating more clearly that the trial court was in error or mistaken. Theobald v. St. Louis Transit Co., 191 Mo. 395, 418, 90 S. W. 354; Richardson v. Kansas City Rys. Co., 288 Mo. 258, 264, 231 S. W. 938, 940. The appellant therefore, having been informed of the circumstance and having failed to object at the time, waived the juror's disqualification of incompetency. State v. Snyder, 182 Mo. 462, 82 S. W. 12; Orr v. Bradley, 126 Mo. App. 146, 103 S. W. 1149; Hart Realty Co. v. Ryan, 288 Mo. 188, 232 S. W. 126.

However, the city did not waive the juror's subsequent misconduct. 39 Am. Jur., Sec. 71, p. 86. And he was guilty of misconduct in informing one or more jurors of his personal knowledge of the blasting and particularly of the crucial fact that the blasting shook the earth. 39 Am. Jur., Sec. 80, p. 94; 46 C. J., Sec. 120, p. 153; Middleton v. Kansas City Pub. Serv. Co., 348 Mo. 107, 152 S. W. (2) 154. The difficulty with this phase of the appellant's case is that the misconduct was shown only by the affidavits and testimony of the jurors themselves. And it is a firmly established rule in this

jurisdiction that a juror may not, by his own affidavit or testimony, impeach the jury's verdict because of the misconduct of a juror (Steffen v. Southwestern Bell Tel. Co., 331 Mo. 574, 590, 56 S. W. (2) 47, 51-52; Reich v. Thompson, 346 Mo. 577, 587, 142 S. W. (2) [434] 486, 492; Carlisle v. Tilghmon, (Mo.) 174 S. W. (2) 798, 801) unless the respondents failed to timely and properly object to the juror doing so and thereby in turn waived the incompetency of the juror to impeach the verdict. Thorn v. Cross, (Mo. App.) 201 S. W. (2) 492; Milbourne v. Robison, 132 Mo. App. 198, 110 S. W. 598.

In this case, when the matter was first approached on the hearing of the motion for a new trial and the offending juror was offered as a witness, respondents' counsel made the timely and proper objection that the verdict could not be impeached by one of the jurors who returned it. The objection was renewed and at the conclusion of the witness' testimony, the respondents renewed their objection and stated that such procedure was against public policy. The court then said: "I will reserve my ruling on that, Mr. Hudson, until I consider the motion." Subsequently, when the affidavits of other jurors were offered and when the verdict was offered, objection was again made. The difficulty in this case arises from the fact that after the juror, whose conduct was in question, had testified and the affidavits of other jurors had been offered the trial court recalled the juror and proceeded to examine him concerning his misconduct. At that time respondents' counsel did not make further objection to his testifying and the problem is whether that fact waived the juror's incompetency to impeach his own verdict. It may be frankly stated that the problem is not free from doubt. It is not always necessary, once timely and proper objection to a witness' testifying has been made, to constantly renew the objection. 4 C. J. S., Secs. 290(b) (5), p. 577, 295(b) (3), p. 589. However, the rule does not permit one to sit by expecting a favorable answer if the circumstances are such as to compel continued vigilance and insistence that the verdict may not be so impeached. Here, all the circumstances considered, including the court's statement that he would rule on the question of the competency of the witnesses and their evidence when he passed on the motion, we do not believe that the respondents' conduct was such that they waived the juror's incompetency and the appellant, having no other evidence of the misconduct, is precluded by the general rule of policy from impeaching the verdict in this manner.

The plaintiffs' first instruction permitted an assessment of damages if the jury found that the city "shot off or caused to be shot off numerous blasts of dynamite which shook and damaged plaintiffs' said house and property . . . . *or caused to be created any condition which caused plaintiffs' house and property to be damaged, . . . by the construction of the sewer* and by the said

blasts of dynamite.'' The city points to the underscored phrase and urges that the giving of the instruction was prejudicial error because it permitted the jury to find against the defendant on grounds which were neither pleaded nor proved. There was some evidence that the tunnelling caused the shale to slip, thereby damaging the property. But aside from that we do not think the instruction so prejudicial as to require a new trial. Mo. R. S. A., Sec. 847.140(b) ; Davis v. Burke, (Mo. App) 188 S. W. (2) 765, 769. The whole controversy revolved around the blasting and whether the blasting shook the earth and thereby injured the property. In the circumstances we do not think that the jury was misled or allowed recovery for some cause not pleaded or proved, consequently the city was not prejudiced by the italicized phrase.

Despite the trial court's remittitur of $15,000 the city contends that the verdict of $10,000 is excessive. The city points to the indefiniteness of the evidence concerning actual expenditures, to the vagueness of the evidence of actual injury and to the fact that originally the plaintiffs asked for $4,944.68 damages and urges that the verdict should be further reduced. Some of the evidence was vague and indefinite but there was evidence that the property was damaged in excess of $10,000. After giving some deference to the fact that the trial court considered the question carefully and required a substantial remittitur (Orr v. Shell Oil Co., 352 Mo. 288, 297, 177 S. W. (2) 608, 614), the record does not so plainly demonstrate excessiveness that we may confidently further [435] reduce it. The respondents did not appeal and they may not therefore complain of the remittitur. 4 C. J. S., Sec. 312, p. 641.

Prejudicial error not being demonstrated upon the record the judgment is affirmed. *Westhues* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. *Leedy* and *Ellison, JJ.*, concur; *Tipton, P. J.*, not sitting.