STATE of Missouri, ex rel., STATE HIGHWAY COMMISSION OF MISSOURI, Respondent,

v.

Ted H. LOCK, et al., Appellants.

No. WD 32573.

Missouri Court of Appeals, Western District.

Oct. 5, 1982.

As Modified Nov. 30, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 30, 1982.

Application to Transfer Denied Jan. 17, 1983.

S. Preston Williams and Thomas E. Barzee, Jr., North Kansas City, for appellants.

Bruce A. Ring, Jefferson City, Earl H. Schrader, Jr., and James B. Jackson, Kansas City, for respondent.

Before KENNEDY, P.J., and WASSERSTROM and MANFORD, JJ.

KENNEDY, Presiding Judge.

A jury awarded defendants Ted Lock and Charlotte Lock $12,000 damages for the taking by the Highway Commission of certain of defendants' property. Defendants appeal from the ensuing judgment. For the reversal of the judgment they rely upon two instances of alleged juror misconduct. The judgment is affirmed.

1. *Failure of juror to respond with disclosure of fact of acquaintance with property.*

The first such instance is the failure of juror Martin to disclose upon voir dire that he had resided in his childhood near the real estate in question. Mr. Martin had, as he later testified in the hearing upon the motion for a new trial, lived in close proximity to the Lock tract for a one-and-a-half-year period in 1941 and 1942 when he was 14 years of age, a freshman in high school.

In dealing with this point on its merits, we assume that the plaintiff waived its objections to juror Martin's testimony on the hearing on the new trial motion. See *Thorn v. Cross*, 201 S.W.2d 492, 496–97 (Mo. App.1947).

On voir dire the jury panel, which included Mr. Martin, was asked the following questions by Mr. Williams, attorney for the appellants:

MR. WILLIAMS: ... First of all, let me tell you very briefly what we are here for. The Lock property which consists of some 224 acres that lies east of town at the edge of town out here has been incumbered in one instance by a very small ³/₁₀ of an acre, I believe, for a construction easement, and then there was a portion of the land taken which is a little less than ten acres.

Now, that's what it's all about. That ten acres was taken in order to build the new Highway 65. Now, I would ask you if you are acquainted with that property. It lies on the east side of 65 and was between Fourth and Tenth Street as best I could describe it for you.

Are any of you particularly acquainted with that piece of property? You know its location generally, I'm assuming. Is there anything about the description of that property and the description of the take that I have just described that brings any question to your mind? I take it by your failure to answer that it does not.

Now, I take it that—I'm sure all of you live in Carroll County. How many of you

live in the city of Carrollton? Let's start on the back. You, sir, your name?

VENIREMAN: Howard Cahill.

VENIREMAN: Mary Wheeler

VENIREMAN: Billy Martin.

VENIREMAN: Rose Tatlow.

MR. WILLIAMS: The remainder of you, I take it, then, live somewhere outside the city limits of Carrollton. Let me ask you if there is anyone on the panel who understands precisely where this property is at this point with no further description. I take it generally you do not know precisely where it is, but generally you do understand; is that correct?

None of the jurors responded as to his acquaintance with the tract in question. Appellants say that Mr. Martin in response to these questions should have come forward with the fact of his boyhood residence near the property. In the hearing on the motion for a new trial, Mr. Martin answered in the affirmative Mr. Barzee's question whether he had lived "on the edge" of the property at some time before the trial. On cross-examination the question was whether he had "lived very close" to the property, to which he answered that he had.

Appellants, in arguing that such omission on Mr. Martin's part to disclose the information entitles defendant to a new trial, cite us to cases which hold that a venireman's "intentional concealment of a material fact" may require the granting of a new trial. The familiar rule is thus stated in *Woodworth v. Kansas City Public Service Co.*, 274 S.W.2d 264, 270–71 (Mo.1955), where our Supreme Court said: "It is the duty of a venireman on voir dire examination to fully, fairly and truthfully answer all questions, so that challenges may be intelligently exercised, and the venireman's intentional concealment of a material fact may require the granting of a new trial." Other cases cited by the defendant are *Rodenhauser v. Lashly*, 481 S.W.2d 231, 234 (Mo.1972); *Piehler v. Kansas City Public Service Co.*, 357 Mo. 866, 873, 211 S.W.2d 459, 463 (1948); and *Brady v. Black & White Cab Co.*, 357 S.W.2d 720, 725 (Mo. App.1962).

■ The incident does not entitle the defendants to a new trial and the court did not err in overruling the motion for a new trial on that ground. It is by no means clear that Mr. Martin's childhood residence near the property called for any response on his part to Mr. Williams' questions. Mr. Williams' questions, with their prefaces, could well have been understood by Mr. Martin as calling for no response from him. There is nothing in the evidence to indicate that Mr. Martin had more than a general acquaintance with the property, or of the location of the property. There is no evidence to indicate that he had a particular and detailed acquaintance with it. There is not necessarily anything in a 14-year-old boy's knowledge of a tract of land, gained from living near it for a period of one and a half years forty years in the past, which would give him anything more than the most general knowledge of the property. Mr. Martin when he testified on the motion for a new trial was asked only if he had lived "on the edge of" the subject property, to which he replied that he had. On cross-examination he was asked if he had lived "very close to" the property, to which he replied in the affirmative. The matter was not further explored. The appellants failed to convince the trial court, and have not convinced us, that Mr. Martin's failure to respond to Mr. Williams' question was the "intentional concealment of a material fact" which would entitle appellants to a new trial. The case falls far short of the situation in *Thorn v. Cross,* 201 S.W.2d at 496, where the juror concealed knowledge of facts directly bearing upon an accident in litigation.

We will notice a case upon which defendants place a good deal of stress, *Robbins v. Brown-Strauss Corp.*, 363 Mo. 1157, 257 S.W.2d 643 (1953). There is in the first place much in that case to show a purposeful withholding of relevant information by the prospective juror. Additionally the court emphasized that the trial court *sustained* the motion for a new trial and they were reviewing for an abuse of discretion in doing so. They *affirmed* the trial court's grant of a new trial. 257 S.W.2d at 648–49.

Appellants' point is disallowed.

2. *Inspection of land by juror during trial. Impeachment of verdict by juror's testimony.*

■ Appellants' second ground for reversal is that one of the jurors during the course of the trial viewed the subject property. The only evidence on this point is as follows: Juror Martin, testifying on the motion for a new trial, said: "Somewhere in that period of time (during the trial) one of the jurors said that he viewed the property." Then Juror Clemens, testifying also on the motion for a new trial, said: "After the first day of the trial I did go up and look. I didn't know where it was at exactly, and I went up and looked just to see exactly where it was at."

The foregoing is the extent of the testimony on that subject.

The evidence from the jurors was inadmissible as an impeachment by a juror of the jury's verdict and the court was correct in not granting a new trial on the basis thereof. The point has been expressly ruled by our Supreme Court in *Mayberry v. Clarkson Construction Co.,* 482 S.W.2d 721, 724 (Mo.1972), where Judge Henley wrote:

We consider next defendant's contention that the court erred and abused its discretion in granting plaintiffs a new trial on the ground that certain jurors were guilty of misconduct. Briefly, there was evidence and offers of proof by plaintiffs, the substance of which was (1) that two jurors failed to answer truthfully questions on voir dire as to their qualifications, and (2) that after the jury had retired to deliberate, one juror went to the scene of the accident during a recess, took measurements and made certain experiments, and furnished the information thus acquired to his fellow jurors on their return to the jury room. This evidence, relied upon by plaintiffs to support the court's action, came from jurors over defendant's objection. The evidence was inadmissible, because a juror may not, over objection, be heard to impeach his and the jury's verdict. The court erred in admitting the evidence, should not have considered it, and, therefore, abused its

discretion in granting a new trial based on this evidence. *Romandel v. Kansas City Public Service Co.,* Mo., 254 S.W.2d 585, 595 [26, 27]; *Davis v. Kansas City Public Service Co.,* Mo. banc [361 Mo. 168], 233 S.W.2d 669, 676 [6]; *Smugala v. Campana,* Mo., 404 S.W.2d 713, 717 [7–11]; *Baumle v. Smith,* Mo., 420 S.W.2d 341, 348 [15–17]; *McDaniel v. Lovelace,* Mo., 439 S.W.2d 906, 909 [3, 4]; *Thorn v. Cross,* Mo.App., 201 S.W.2d 492, 496–497 [5, 6]; *Cook v. Kansas City,* Mo., 358 Mo. 296, 214 S.W.2d 430, 433–434 [7–11].

■ Defendants acknowledge the *Mayberry v. Clarkson* rule (historically the Lord Mansfield rule, *Vaise v. Delaval,* 1 T.R. 11, 99 Eng.Rep. 944 (K.B.1785)), without agreeing to it, but seek to get around it by two further arguments. They say first that the plaintiffs waived the objection to the testimony of jurors Martin and Clemens. They note that nine questions had been asked of juror Martin in the new trial hearing before any objection was made by the plaintiff. The nine questions, however, had related to prefatory matters and to Mr. Martin's childhood residence near the tract in question. Then Mr. Barzee in defendants' behalf opened up a new subject, the subject of juror Clemens' inspection of the site. His question was: "Now, do you recall, did any of the jurors, either you or any of the other jurors, visit the real property in question during the time of the trial?" Mr. Jackson for the Commission objected: "I will object to the question for the reason it is delving into the deliberations and conduct of the jury after it was impaneled, and the reason is he would be incompetent to testify." The objection was ultimately overruled.

Juror Clemens when he was called to the stand on the new trial hearing was asked some prefatory questions by Mr. Barzee for the defendants. When Mr. Barzee began to inquire about Mr. Clemens' visit to the site during the trial, the plaintiff promptly objected. The plaintiff did not cross-examine Mr. Clemens.

We hold that the plaintiff did not waive its objection to the jurors' testimony with respect to the alleged visit by juror Clemens to the tract in controversy.

Secondly, defendants claim that the plaintiff is concluded by the affidavit filed in support of defendants' motion for a new trial, but this argument, too, must fail. Attached to defendants' motion for a new trial was the affidavit of Mr. Barzee, one of the attorneys for the defendants, which states that he learned by a telephone conversation with Mr. Martin about the two instances of alleged juror misconduct. In its reply brief appellants say: "The affidavit filed herein stands as uncontroverted evidence to the facts contained therein, since plaintiff neither filed a counter-affidavit nor objected to the affidavit filed on behalf of defendants."

The record does not support appellants' statement. Plaintiff in response to the defendants' motion for a new trial and supporting affidavit, filed a "motion to strike", in which it moved to strike the allegations of juror misconduct from the new trial motion. The stated grounds for the motion to strike the allegations were that the supporting affidavits improperly undertook to impeach the jury verdict by the testimony of the jurors, and for the further reason that the affidavit was "in the nature of a third-party affidavit", citing *McDaniel v. Lovelace,* 439 S.W.2d 906 (Mo.1969).

Appellants cite in support of their claim of the conclusive effect of the affidavit *Thorn v. Cross,* supra, but that case contains a significant difference from the case before us. Said the court in that case, 201 S.W.2d at 496:

> Whatever objections might have been made, such as that the McPike affidavit was hearsay, or that the verdict could not be impeached by the jurors' statements or admissions, were waived by plaintiffs. The court, therefore, had before it, in support of the motion for a new trial, uncontradicted evidence to which no objection was made.

As is noted supra, the plaintiff in our case did promptly challenge Mr. Barzee's affidavit by its motion to strike. The affidavit did not establish its allegations and thereby entitle defendants to a new trial.

■ Defendants undertake to bring their arguments within the aegis of the Due Process and Equal Protection provisions of the U.S. Constitution and the Constitution of Missouri. The principles enunciated in appellants' brief are beyond argument. But they cite no cases to show wherein these constitutional provisions in any way limit, modify or expand the principles upon which we have based our decision, or to show wherein their constitutional rights have been in any way violated. In what appears to be a thrust at the Lord Mansfield rule against the impeachment of a verdict by the testimony of jurors, defendants say in their brief: "The United States Supreme Court decision in *Parker v. Gladden,* 385 U.S. 363 [87 S.Ct. 468, 17 L.Ed.2d 420] (1966), suggests that in criminal cases, at least, constitutional rights may require inquiry into the circumstances regarding a jury's deliberation regardless of the jurisdiction's rule on impeachment by jurors." In *Parker,* the Supreme Court held that prejudicial remarks to some members of the jury by a bailiff were "outside influence" violating a defendant's Sixth Amendment right of confrontation of witnesses against him. 385 U.S. at 364, 87 S.Ct. at 470. There is in that decision nary a word about the Lord Mansfield rule. The case does not stand for the proposition for which defendant cites it, either directly or indirectly.

■ We add, ex gratia, that while the juror's visiting the site was improper, his doing so, even if properly proved by other evidence than the juror's testimony, would not automatically call for a new trial. See *Middleton v. Kansas City Public Service Co.,* 348 Mo. 107, 152 S.W.2d 154, 159 (1941); *Turnbow v. Kansas City Railways Co.,* 277 Mo. 644, 211 S.W. 41, 44 (1919). It is hard to see from this record that the defendants could have been in any way prejudiced by juror Clemens' visit to the location of the taking.

The judgment is affirmed.

All concur.